## Eminence Distillery Company v. Fremd.

(Decided February 4, 1921.)

### Appeal from Henry Circuit Court.

1. Contracts—Construction—Options—Operation of Distillery.—Contract construed to contemplate only five annual runs of appellant's

distillery and five annual payments to appellee for receiving on his land the offal therefrom; and that an option therein by appellant to make such runs within five or seven years as it desired, necessarily implied a suspension of all of the provisions of the contract during two of the seven years it elected not to operate.

2.   Contracts—Change in Law Making Performance Illegal.—If subsequent to the execution of a valid contract a law is enacted by Congress making its performance illegal, the contract is thereby terminated, and the obligor is released of liability thereunder, but this rule does not apply where the change in the law merely makes performance more burdensome.

3.   Contracts—Affected by Act of Congress.—Act of Congress which became effective September 9, 1917, known as the Food Control Act, did not render impossible of performance nor terminate a contract to operate a distillery for from four to six months between July 8, 1917, and July 8, 1918, unless it could be operated to produce distilled spirits for beverage purposes only or such operation merely was contemplated by the parties in making the contract.

4.   Pleading—Plea of Act of Congress in Defense of Suit Upon Contract.—An answer which pleaded the act in defense of a suit on a contract obligation and simply stated the act "became a law on September 9, 1917, and that by reason thereof it became, and has been ever since, unlawful for this defendant to operate its distillery as contemplated and agreed by the contract" stated only a conclusion of the pleader where the contract was silent as to the purposes for which the distillery could be and was to be operated, and the trial court did not err in sustaining a demurrer thereto.

BLAKEY, DAVIS & LEWIS for appellant.

W. B. BARBOUR and W. B. MOODY for appellee.

OPINION OF THE COURT BY JUDGE CLARKE—Reversing.

On July 8, 1911, the parties hereto entered into a written contract by which the distillery company obligated itself to build on its own premises a large barn in which to feed its own cattle the slop from its distillery, and to construct in connection therewith concrete pits to receive the offal from the distillery and barn, which Fremd agreed to receive and to distribute upon his farm adjoining the distillery premises. The company also was to furnish and place in position a pump and several lines of pipes leading therefrom to different parts of Fremd's farm with cut-off valves and two hundred feet of rubber hose through which the company was to pump the liquid contents of the pits on to Fremd's land; and it was to notify him each day the pump would be in operation in

order that he might control the distribution of the liquid offal upon his farm as he desired. He was to haul the solid contents from the pits to his land, keep the pits clean and assume all responsibility for all suits or claims for damages asserted against the distillery company "as for maintaining a nuisance, or otherwise arising out of the manufacture and distribution of said offal and heavy particles aforesaid," and to indemnify the company against loss or cost by reason thereof, "during the term of this contract." In consideration of the obligations thus assumed by Fremd, the company bound itself to pay him "the sum of $1,800.00 per year to be paid on the first day of April during each and every year during the continuance of this contract, the first payment to be made April 1, 1912." Then follows the stipulations upon which this controversy primarily hinges, which are as follows:

"It is mutually agreed between the parties hereto that this contract shall run for a period of five years from this date with the option on the part of the party of the second part to continue the same for an additional period of five years under the same terms.

"It is further mutually agreed that if for any reason the party of the first part should not be able to run its distillery during each of the first five years of this contract, it shall have the period of seven years within which to make said runs of the distillery, it being understood that the distillery is to be operated from four to six months during each year, but if for any cause the first party is not able or does not desire to make said runs within five years, it shall have the privilege of making the same in seven years as aforesaid, with like conditions attached to the second period of five years, provided the second party elects to exercise his option therefor."

The distillery made a "run" in each of the first four years of the contract and paid to Fremd $1,800.00 on April 1st in each of such years. It did not make a "run" in the 5th, 6th or 7th year or pay to Fremd $1,800.00 in any of those years.

On May 12, 1919, Fremd filed this action upon the contract against the company seeking to recover $1,800.00 with interest which he alleged was due him on April 1, 1916.

In defense of such liability on April 1, 1916, or at all under the contract the company pleaded that in the exer-

cise of its option to make five runs within seven years, it did not operate its distillery within the fifth or sixth year of the contract and that it was prevented from doing so in the seventh year by the Food Control Act of Congress enacted August 10, 1917, being chapter 53 of the acts of the first session of the 65th Congress, which became effective on September 9, 1917, and which as alleged made it unlawful for the defendant to carry out its contract with the plaintiff by making a run of its distillery in the seventh year of the contract.

The demurrer of Fremd to this answer was sustained by the court and the distillery company declining to plead further, a judgment was entered in favor of Fremd for $1,800.00 with interest from April 1, 1916; and from that judgment the distillery company has prosecuted this appeal.

It is the contention of Fremd that since the contract in positive and unambiguous terms provides for the payment to him of $1,800.00 ''on the first day of April during each and every year during the continuance of this contract, the first payment to be made April 1, 1912,'' these payments were to be made to him during the continuance of the contract whether for five or seven years and whether the company made a run of its distillery in any or all of said years. It is the contention of the company, upon the other hand, that the contract contemplates only five annual distillery runs and five annual payments during the continuation of the contract and that its option to make these runs within five or seven years as it desired necessarily implied a suspension of all the provisions of the contract during the two years, the fifth and sixth, it elected not to make such runs.

The first question for determination therefore is whether the contract obligations of the parties continued or were suspended during the fifth and sixth years after its execution, by the defendant's election not to make a run of its distillery in those years. We are informed by brief of counsel that the lower court was of the opinion that Fremd was required by the contract to furnish the distillery company indemnity insurance against prosecution continuously from the date of its execution until its final termination and that as this indemnity was a part of the consideration for the payment of the $1,800.00 a year to him, the company was liable to Fremd for such payments through the whole time which by its election

was made seven intead of five years.    And it is upon this interpretation of the contract that Fremd first asks an affirmance of the judgment.

We are convinced, however, that such is not the meaning of the contract.    In the first place Fremd does not simply agree to furnish to the company indemnity insurance for its liability to prosecution as for maintaining a nuisance arising out of the manufacture and distribution of the offal from the distillery, since by the contract, he assumes primary liability himself for same and the agreement of indemnity is only that the company shall not be put to expense even if as a matter of law and independent of the contract, it might also be held liable for his contract liability therefor.    That such is the meaning of the contract we think is entirely clear since in the same clause containing the agreement to indemnify, is the agreement that Fremd "obligates and binds himself to be responsible for all claims of every kind and nature for damages against the party of the first part (the distillery company) as for maintaining a nuisance, or otherwise arising out of the manufacture and distribution of said offal and heavy particles aforesaid."    By the terms of the contract, therefore, this liability is primarily placed upon Fremd, and the indemnity he furnishes against loss or cost to the company is for his own assumed liabilities. Again, the liability is such as arises from the manufacture and distribution of the offal and this is necessarily confined to the periods of operation and distribution, or when the distillery is making a run; hence in the years when it elected not to make a run, there could arise no such liability as was contemplated by the contract. Moreover the option reserved to the company to operate or not would be entirely meaningless and without value to the company, for whose sole benefit it was manifestly inserted in the contract, unless it means a suspension of its contract obligations during the years when the option was exercised.    We are quite sure, therefore, that the parties contemplated and the contract means that if the company elected not to operate in any one or two of the first five years, the contract obligations of both parties were suspended for such years but to be performed within the seven years.    Under such a construction the provision upon which Fremd so confidently relies to sustain his claim for the $1,800.00 for the fifth year, namely, that this sum was to be paid to him "on the first day of April

during each and every year during the continuance of this contract," is ineffective for that purpose, since the effect of the exercise by the company of its option not to operate its distillery or its feeding barn that year suspended the contract for that year. So also as to the sixth year. But the contract very clearly contemplates, as the company concedes, at least five runs of the distillery and five payments to Fremd within seven years; hence, by the terms of the contract the company is liable to Fremd for $1,800.00 for the seventh year whether the distillery was operated that year or not, and the error if any in the judgment is in allowing interest from April 1, 1916, instead of from April 1, 1918, unless, as the company contends, it was relieved of its contract liability for the seventh year by operation of law.

In support of this contention the company pleads the enactment by Congress of the act above mentioned, which, it insists, renders the contract impossible of performance. If such is the effect of the act pleaded, there can be no doubt that the distillery company, as well as Fremd, was thereby relieved of all obligations thereunder, since it is a familiar principle of law subject to some exceptions not pertinent here, that where a contract, legal in its inception, becomes illegal by subsequent statutory enactment, the contract is terminated thereby and neither party can maintain an action for a failure to further perform its obligations, but this rule does not apply where a change in the law merely makes performance more burdensome. N. N. & M. V. Co. v. McDonald Brick Company's Assg., 109 Ky. 408; L. & N. R. Co. v. Crowe, 156 Ky. 27; L. & N. R. Co. v. Mottely, 219 U. S. 467; Am. Merc. Exchange v. Blunt, 10 L. R. A. (N. S.) 415; 6 R. C. L. 1000; 13 C. J. 646.

The next consideration, therefore, is whether or not the act of Congress rendered illegal the operation of the distillery for the seventh year of the contract, since if the company could not legally operate its distillery that year the contract obligations, based upon such operation, can not be enforced. The contract was executed on July 8, 1911, and the seventh year began July 8, 1917. The act in question became effective September 9, 1917, or ten months before the expiration of the seventh year of the contract during which the distillery company under the contract had the right to make a run of from four to six months. It is therefore clear the company did not have

the opportunity to comply with its contract to make a run that year before the act became effective, but would have had ample time to do so thereafter within the year unless prevented by the act.

The act, however, in so far as applicable only makes it unlawful to use food, fruits, food materials or fuel in the production of distilled spirits for beverage purposes, and provides ''that under such rules, regulations and bonds as the President may prescribe, such materials may be used in the production of distilled spirits exclusively for other than beverage purposes, etc.'' Pursuant to this latter provision the President promptly prescribed and promulgated rules and regulations under which the distillery could have been operated for the production of distilled spirits for other than beverage purposes.

Obviously, therefore, this act, even if it made it more burdensome, did not render it impossible for the company to operate its distillery during the seventh year nor terminate the contract, unless it could be operated only to produce distilled spirits for beverage purposes, or such operation merely was contemplated by the parties in making the contract. Neither of such states of fact is made to appear anywhere in this record. The contract contains no such intimation, such facts are not pleaded and we have no judicial knowledge of the matter. It is simply stated in the answer that this act of Congress ''became a law on September 9, 1917, and that by reason thereof it became, and has been ever since, unlawful for this defendant to operate its distillery as contemplated and agreed by the contract,'' but manifestly this is a conclusion of the pleader, unsupported by the contract or any statement of facts in the pleadings.

The court therefore did not err in sustaining a demurrer to the answer in so far as the seventh year of the contract is concerned, but did err in so far as the fifth and sixth years are concerned.

It results therefore that the court also erred in adjudging the $1,800.00 due for the fifth instead of the seventh year of the contract, and in allowing interest thereon from April 1st, 1916, instead of from April 1st, 1918.

Wherefore the judgment is reversed for proceedings consistent herewith.

The whole court, except Judge Quin, sitting.