## Heidelberg Brewing Co. v. E. F. Prichard Co., Inc.
## E. F. Prichard Co., Inc., v. Heidelberg Brewing Co.

May 5, 1944.

Sawyer A. Smith, Stanley Chrisman and J. R. McGarry for Heidelberg Brewing Co.

James E. Quill and Keenon & Odear for E. F. Prichard Co.

OPINION OF THE COURT BY JUDGE TILFORD—Affirming in part and reversing in part.

These appeals involve the validity of a written contract between the parties dated September 10, 1942, and the effect upon the rights secured thereby of an order of the Federal War Production Board issued on March 1, 1943, limiting the quantity of malted grain and malt syrup which might be used in the manufacture of malt beverages to 93% of the quantity so used during the corresponding period of the preceding year.

For more than two years preceding the execution of the written contract, the parties had operated under parol agreements by which the Brewing Company undertook to supply the Prichard Company with an ale or malt beverage brewed according to the latter's formula, and bottled under its brands. In June, 1942, the War Production Board limited the number of bottle crowns which might be used by brewers or bottlers of malt beverages to 60% by weight of the amount of crowns used by them during the corresponding month of the preceding year, but by using a different or lighter type of

crowns, the brewers and bottlers had been able to increase the number of crowns which might be used to approximately 70% of the number used in the corresponding month of 1941. A dispute arose between the parties relative to the effect of the crown regulation, which dispute, the contract of September 10, 1942, was designed to settle. The contract is too lengthy to be set forth in full, and accordingly we shall quote only those provisions most material to the matters in controversy:

Section 2. "Whereas, the Federal Government has placed a regulation or limitation upon the number of crowns which can be used by any manufacturer or bottler upon the beer, ale or malt beverages manufactured or bottled for the market by said manufacturer or bottler; and

"Whereas, it is the desire of the parties hereto to permit the party of the first part (the Prichard Company) to have the proportionate part of crowns obtained or obtainable by the party of the second part, (the Brewing Company) based upon the deliveries made during the year 1941 by the party of the second part to the party of the first part;

"It is now, therefore, further agreed between the parties that the party of the second part will deliver to the party of the first part a sufficient amount of ale to give to the party of the first part the full number of crowns to which it would be entitled, as calculated upon the basis of the Federal regulations or limitations now in effect.

"Party of the first part will furnish to the party of the second part, a list of the quantities and size of packages on which he will take delivery under the terms of this contract; each week said list to be furnished by the party of the first part to the party of the second part not later than Saturday preceding the week on which said deliveries are to be made, and the party of the second part agrees to make deliveries in accordance with the statements of said list as to quantities and size of packages."

Section 4. "Party of the first part agrees to take of the ale above referred to and pay for same under the terms of this contract, at least one hundred per cent. of the number of crowns taken by said party of the first

part during the year 1941, it being understood and agreed between the parties that should the party of the first part fail to take said one hundred per cent of the number of crowns taken during the months of 1941, and should said failure continue for a period of three months, then the party of the second part shall have the right to go into the territory of the party of the first part and sell said ale or malt beverage under the label of the party of the first part during the life of said contract, or until said delinquency on the part of the party of the first part, is corrected and the amount of said purchases by it is brought up to said figure of one hundred per cent, it being understood, however, that all of the foregoing portion or paragraph of this agreement is subject to any further limitations which may be placed upon the delivery of said product by Federal or other legal regulations.''

The regulation of March 1, 1943, limiting the quantity of malt which might be used, precipitated the present litigation in which the Prichard Company sought an injunction to compel the Brewing Company to deliver to it the quantities to which it conceived itself to be entitled by the terms of the contract of September 10, 1942. It also sought to compel the Brewing Company to deliver 11,000 cases of ale claimed to have been wrongfully withheld during the months of July and August, 1942, while the parties were operating under a verbal agreement.

With respect to the effect on the contract of the Federal limitation upon the quantity of malt which the Brewing Company might use, a majority of the members of this Court, in reviewing one of the several interlocutory orders of the Chancellor denying temporary injunctions, expressed the view that the limitation did not excuse the Brewing Company from fulfilling its obligation to the Prichard Company, ''since it does not appear that defendant has contracts with customers other than plaintiff requiring it to deliver specified quantities of its products at specified intervals.'' We perceive no reason for departing from this conclusion, since the record still fails to show that the Brewing Company has any customers other than the Prichard Company whose requirements it is obligated to supply, or to whom it has contracted to furnish any quantity whatsoever. Not only is it not shown that the Brewing Company is unable to

supply the Prichard Company with the quantity of ale which it is entitled to demand without violating the contractural rights of others; but there are intimations in the record that by the use of substitutes for the restricted malt substances, the Brewing Company has been able to manufacture more of its products than it was manufacturing at the time the contract between the parties was executed. See Ducas Co. v. Bayer Co., Inc., Sup., 163 N. Y. S. 32; Eminence Distilling Co. v. Fremd, 191 Ky. 191, 229 S. W. 369. So much, therefore, of the Chancellor's decree which limits the quantity of ale required to be furnished the Prichard Company by the Brewing Company to 93% of the quantity to which it would be entitled but for the malt limitation, is erroneous.

Turning now to the question of the contract's validity attacked by the Brewing Company on the ground that it is too indefinite for enforcement, that it is unilateral, and was materially altered by the Prichard Company after its execution, it is necessary to emphasize that at the time the contract was executed the Prichard Company had built up an increasingly large demand for the brands which were supplied it exclusively by the Brewing Company; that the malt limitation had not been promulgated and there was no restriction on the quantity of ale produced; that the sole restriction was upon the number of crowns which might be used; and, if a limitation upon the quantity of ale which the Prichard Company was entitled to demand was necessary to the contract's validity, that limitation was supplied by the restriction upon the number of crowns to be employed in bottling it. While the Prichard Company had the right to designate the size of the containers on which the crowns allotted to it should be employed, and, according to the contemporaneous construction of the parties, could obtain twice the quantity of ale by directing that it be bottled in quarts, and four times as much by directing that it be bottled in half gallon containers, nevertheless, the contract limited the number of crowns to be supplied to the Prichard Company by the Brewing Company during any one year to the number supplied during the year 1941, reduced in proportion to the reduction forced by the Federal order in the total number of crowns which the Brewing Company might employ, thus establishing readily ascertainable maximum and minimum quantities of ale which could be demanded

by the Prichard Company during any one year. Moreover, we are not prepared to say that a limitation upon the amount to be furnished under a contract to supply a customer's requirements is necessary to its validity. In fact, the weight of authority is to the contrary. 46 Amer. Juris., Sales, Section 63, pp. 254, 255, 256; Sections 158, 159, pp. 334-337; 12 Amer. Juris., Contracts, Section 69, pp. 560, 561.

The contention that the contract was unilateral is sufficiently answered by the fact that if, as contended by the Brewing Company its language does not clearly bind the Prichard Company to accept and pay for the quantity of ale to be furnished thereunder, a contention with which we disagree, such promises would necessarily be implied. 46 Amer. Juris., Sales., Section 62, pp. 253, 254. Even if we should ignore the preamble to the contract reciting $1 and the mutual promises and agreements of the parties as the considerations for its execution, we should, nevertheless, and notwithstanding that portion of Section 4 which provides an additional remedy to the Brewing Company, be compelled to hold, construing the contract in its entirety, that the Brewing Company, by resort to the Courts, could compel payment of the stipulated prices for the minimum quantities of ale it was required to furnish, measured by the number of crowns it was obligated to supply.

The charge that the contract was materially altered by the Prichard Company after its execution may properly be considered in connection with the defense that the contract sued on was not the contract actually executed by the parties since they both stem from the fact that in preparing the petition, counsel copied therein a preliminary draft instead of the document actually signed by the parties. An idea of the immateriality of the slight variation between the language employed in the two instruments may be gathered from the fact that in its original answer filed more than five months after the filing of the petition and following several hearings on interlocutory motions, the defendant admitted that the contract as set forth in the petition was the contract entered into by the parties on September 10, 1942. Not until December 13, 1943, did the Brewing Company, by a second amended answer to which was attached a copy of the document actually signed, call attention to the "alterations" which it now relies on. From the testimony

subsequently introduced, it would appear that the preliminary draft of the contract was prepared in the office of the attorney for the Prichard Company and that it was re-written by the attorney for the Brewing Company at a meeting at the latter's office at which each of the terms of the preliminary draft was discussed. E. F. Prichard, president of the Prichard Company, put his signed copy of the re-written contract in a safety deposit box, and apparently was under the impression that it was the same as the preliminary draft, except that it omitted an agreement concerning a brand of beer belonging to the Brewing Company, the agency for which the preliminary draft conferred upon the Prichard Company. Some time after the suit had been instituted he discovered the substitution of the word "crowns" for "cases" in the fourth section of the signed copy, and corrected it by drawing a line through the word "crowns" and writing "cases" above it. In any event, the only alteration made by the Prichard Company in its signed copy was the substitution of the word "cases" for the word "crowns" in the fourth section heretofore quoted. As is obvious, the change related only to the obligation of the Prichard Company to accept and pay for the ale furnished it under the contract and could not have prejudiced the Brewing Company, since it did not reduce the minimum quantity of ale which the Brewing Company was entitled to furnish, or deprive it of any remedy secured to it by the contract or which would be implied by law. In fact, the employment of the word "crowns" instead of "cases" in Section 4 of the contract operated to the advantage of the Prichard Company, since, by directing that the crowns to which it was entitled be used on pints, it could limit the quantity of ale it was required to accept during any one year to the smallest amount which could have been supplied it during 1941, although it might actually have received a larger quantity bottled in quarts in 1941.

The argument advanced by the Brewing Company that the purpose of the change was to create an obligation to furnish ascertainable quantities of ale in lieu of an obligation to furnish merely crowns, also loses sight of the fact that the parties were not interested in buying or selling crowns except as necessary adjuncts to the marketing of ale, and that the second section of the contract defining the Brewing Company's obligation to supply ale, and employing crowns in measuring the extent

of that obligation was left unchanged. Having concluded that the changing of the word "crowns" to "cases" in the fourth section of the Prichard Company's copy of the signed contract did not constitute a material alteration of that instrument, we may dispose of the defense that the contract sued on was not the contract actually executed, by pointing out that there was no substantial difference between the wording of the preliminary draft and that of the signed document—at least none that actually could have varied the rights, remedies, or obligations of the parties—and that the error in suing on the preliminary draft was non-prejudicial in view of the fact that the signed copy was filed in the record and established as the true contract prior to the trial of the action on its merits.

Finally, it is argued on behalf of the Brewing Company that since it is not alleged that the Brewing Company is insolvent, the Prichard Company has an adequate remedy at law, namely, an action to recover damages for breach of the contract, and was not entitled to resort to equity for its specific enforcement through the process of injunction. This position would be well taken were it not for the showing that the ale which the Brewing Company contracted to furnish is, under present conditions, unobtainable by the Prichard Company elsewhere, and that the damages which the latter would sustain through inability to meet the demands of its customers are incapable of measurement. The rule that the existence of an adequate remedy at law precludes a resort to equity for relief, is not only ancient, but sound. Hence, a buyer of personalty obtainable on the open market is ordinarily denied specific performance of a contract of purchase. But the facts of this case bring it within the exception thus stated in 49 Amer. Juris. "Specific Performance," Section 126, Page 148:

"If from the nature of the case, however, an adequate remedy at law does not exist and the plaintiff stands in need of specific relief, equity will entertain jurisdiction to enforce the contract as readily in the case of a contract involving personalty as in the case of a contract involving land."

A majority of the members of this Court in effect so held in directing that a temporary injunction be granted the Prichard Company, specifically enforcing Section 5 of the contract (not involved on this appeal)

requiring the Brewing Company to furnish additional quantities of ale upon being supplied by the Prichard Company with "reconditioned crowns" exempted from the Federal limitations.

One other matter remains to be disposed of, namely, the contention of the Prichard Company that the Brewing Company should be required to furnish it 11,000 cases of ale which the Brewing Company "fraudulently and surreptitiously deprived the plaintiff from receiving" during July and August, 1942, by falsely representng that the Federal Crown Limitation of June, 1942, had reduced by 30% the number of crowns which the Brewing Company had been able to employ when in truth the Brewing Company, as a result of certain negotiations, had been able to employ an undiminished number of crowns during those two months. The difficulty with this particular claim of the Prichard Company, rendering any extended discussion of it unnecessary, is that there is no sufficient showing of the specific terms of the verbal contract under which the parties were operating during July and August, 1942. True, the Prichard Company alleged in its petition that the contract of September 10, 1942, was entered into "for the purpose of expressly carrying out the oral contract already in effect between the parties," but this was denied by the Brewing Company, and there is nothing in the contract of September 10th, to indicate that any of its terms were intended to be retroactive.

The first paragraph of the judgment appealed from requiring the Brewing Company to furnish the Prichard Company the ale "it is entitled to, subject to the Federal Regulations of 70% of the crowns it used in 1941, so long as the quantity of ale does not exceed 93% of the malt necessary in the manufacture of plaintiff's product." The concluding phrase of the above quotation, limiting by its percentage of malt the quantity of ale to be furnished, should be omitted, and the quantity to be supplied, more definitely described as "such quantities as may be bottled in pints, quarts, or half gallons at the E. F. Prichard Company's direction by the use of 70% of the number of crowns supplied that Company by the Heidelberg Brewing Company during the corresponding period of 1941."

The second paragraph of the judgment making permanent the injunction requiring the Brewing Com-

pany to furnish the Prichard Company not exceeding 3000 additional cases of ale monthly under Section 5 of the contract "until the amount of tin furnished by the plaintiff is exhausted" should be modified by substituting for the quoted phrase, the words "so long as the crowns heretofore manufactured by defendant from tin cans heretofore furnished by the plaintiff are unconsumed in supplying the additional ale called for by Section 5 of the contract, and so long as the plaintiff supplies the defendant with re-conditioned crowns for that purpose, subject to the availability of bottles and cases for said purpose, and subject to the legality of selling ale bearing re-conditioned crowns under State or Federal laws or regulations." This will more accurately express the purposes of Section 5, the validity of which is not in dispute, and will accord with the temporary injunction granted by this Court requiring the Brewing Company to treat as "re-conditioned crowns," for the purpose of Section 5, the crowns which it had voluntarily manufactured out of the tin cans furnished it by the Prichard Company.

Both parties appealed from the judgment rendered on final submission, and it was stipulated that the appeals might be prosecuted on the same record. The order to be entered, therefore, is that on the appeal of the Brewing Company first captioned, the judgment is affirmed; and on the appeal of the Prichard Company, the second captioned, the judgment is reversed with directions to enter a judgment in accordance with the views herein expressed.