# Mid-Continent Petroleum Corporation
# v. Barrett et al.

June 2, 1944.

Byron & Sandidge and Carroll E. Byron for appellant.

E. B. Anderson for appellee.

OPINION OF THE COURT BY STANLEY, COMMISSIONER— Reversing.

The appeal concerns the right of a lessee to cancel a lease of a certain lot upon which it had erected a gasoline filling and service station because of the effect of the Federal war-time restrictions in relation to the business conducted and products handled on the premises. The question is resolved into the construction of a provision in the lease authorizing its cancellation by the lessee under certain specified conditions.

The lease covers a lot at Third and Allen Streets in Owensboro. It is for twenty years from July 1, 1926, subject to the right of termination at an earlier date as

provided in the instrument. The rental is $150 a month for the last ten years, in addition to the payment of all taxes on the lot with improvements. It is stipulated in the lease: "That the premises herein leased are to be used as the site for a filling station for the sale of gasoline, oils or similar products used in the operation of automobiles, and for an office and other buildings in connection with such filling station, or for the conduct of the business of selling or servicing automobiles, or other motor controlled vehicles, their equipment, parts and accessories, or any automotive fuel; and lessor agrees that his remaining property at this location will not be used for the sale of gasoline or petroleum products during the term of this lease; or lessee may use the premises for any lawful purposes pertaining to automobiles."

Paragraph 13 of the lease is as follows: "If during the term of this lease, or any extension thereof, the use of the said premises for an oil and gasoline filling station be prevented, suspended or limited by any zoning statute, or ordinance, or any other municipal or governmental action or valid law, ordinance or regulation; or the use of said premises be affected or impaired by the widening, altering or improving of any streets fronting or adjoining said premises, then lessee may cancel this lease by giving thirty (30) days written notice to lessor."

The lessee gave notice, pursuant to that provision, that it would terminate the lease and deliver up the possession of the premises on April 6, 1943, and accomplished the purpose by doing so. The lessors brought this suit for rentals accruing thereafter. The defendant pleaded that in accordance with the lease it had been using the premises for the sale of gasoline, oil, greases, tires and tubes and for the servicing of automobiles of the public. It relied upon its right to cancel the lease under the terms of paragraph 13, and pleaded the several acts of Congress and numerous regulations and orders issued pursuant thereto by the President and other officers and agencies relating to the prohibitions, limitation and restriction of the acqusition, sale and distribution of the commodities handled by it at the filling station. These were stated in detail, with the allegation that they had caused a substantial and material decrease and diminution in the volume of business it could do on the leased premises. A demurrer to the answer was sus-

tained and judgment was rendered for the plaintiffs, the defendants having no further plea.

The situation is thus summarized in the appellant's brief: "Under the allegations of Mid-Continent's answer the use of the premises for a filling station has been prevented, suspended or limited by the following: By the governmental regulations reducing the amount of gasoline permitted to be sold to any one person; by the governmental regulations reducing the number of tires, tubes and automobiles that can be sold and the consequent decrease of automobiles being driven to Mid-Continent's filling station; by the same regulations prohibiting the use of credit cards and similar sales devices, and by regulaton prohibiting the operation of a filling station except during certain hours."

There have been a number of cases decided in New York and a few other jurisdictions relating to the interference with the performance of lease contracts by acts of the government in the prosecution of the war. See 137 A. L. R. 1199; 147 A. L. R. 1273; 148 A. L. R. 1382. As stated in 147 A. L. R. page 1274: "Generally speaking, the courts have declined to relieve tenants from the obligations of their commercial leases because of the fact that the volume of business transacted has been curtailed as a result of the Federal rationing laws."

Supporting that note are several cases involving the automobile business, which has been so materially disturbed by the regulations and restrictions. All of the decisions were adverse to the right of cancellation because there had been no complete frustration of the performance of the contract, or impossibility of carrying on the business for which the property was leased, or restrictions upon other or additional uses of it. All of the cases are in accord with the general rule that in the absence of a stipulation that the lessee may surrender or terminate the lease if he should be prevented from legally using the premises for the purpose contemplated, the lease is not invalidated by reason of a subsequent prohibitory or restrictive statute, ordinance or administrative ruling if the lessee may devote the property to other uses. 32 Am. Jur., Landlord & Tenant, Secs. 229, 230; Baughman v. Portman, 11 Ky. L. R. 181; Baughman v. Portman, 14 S. W. 342, 12 Ky. L. R. 342; Eminence Distillery Co. v. Fremd, 191 Ky. 191, 229 S. W. 369.

It does not appear that in any of those cases involving war-time restrictions or regulations there was a clause in the lease providing for its cancellation such as is contained in the lease in this case. For the courts to have held otherwise would have seriously affected nearly every lease of commercial property for there is scarcely any business, particularly mercantile, which has not been diminished, made less profitable and more difficult to conduct by the innumerable restrictions and governmental regulations.

Therefore, the decisions are in complete accord with an elementary principle of the law of contracts that when a party engages without qualification to do an act, his performance is not excused because it becomes onerous or unprofitable. It is deemed his own fault if he does not expressly provide against contingencies and exempt himself from responsibility in certain events. In this contract the lessee had the foresight to provide expressly for contingencies which would affect the operation of its business on the premises. Doubtless war, with all its tragic consequences, was far from the expectation of the parties, but the language used in expressing the conditions upon which the lessee's option to terminate the lease rests is sweeping in its reach, both with respect to cause and results. We cannot agree with the appellee that the language must be construed as applicable only to interference with the occupancy of the premises. The provision is that the lessee may cancel the lease if the *"use"* of the premises "for an oil and gasoline filling station be prevented, *suspended* or *limited by* any zoning statute or ordinance or *any other* municipal or *governmental action* or valid law, ordinance or *regulation.*" (Our emphasis.) This part of the conditions would seem to refer to the conduct of the business. We do not think that the rule of ejusdem generis should be applied and only laws or regulations pertaining to or of the nature of zoning be held to have been contemplated. While such laws invariably have related both to the character of use to which property may be put, as well as to the character of the building, zoning statutes and ordinances are not permitted to impose their terms upon uses or buildings established or constructed before passage. The second group of conditions contained in this clause of the lease would seem to refer to physical occupancy, for the option given by them rests upon the use of the premises being "affected or impaired by the widening, altering

or improving of any streets fronting or adjoining the said premises.'' Whichever condition or group of conditions may have materialized, whether operational regulation or physical interference, the minds of the parties were doubtless upon the volume or the conduct of the business, for occupancy and the privilege thereof are but the means to an end, namely, a profitable venture. Under the narrow construction of the provision claimed by the appellee, a trivial widening of the street or a restriction denying the use of one pump or any limitation upon the stock or storage of gasoline, however liberal it might be, would authorize a cancellation, but a suspension of business by law for six months or a year or prohibition of sale of gasoline altogether would not.

That the parties intended the controversial provision to embrace interference with the business of the volume thereof is fortified by the agreement of the lessor that he would not permit the remainder of his property adjacent to the leased premises to be used for similar purposes during the term of the lease.

Since this appeal has been pending the Supreme Court of Minnesota has decided a case in which the lessee of a gasoline filling station had sought to exercise its option to terminate the lease upon the same grounds as in the case before us and under provisions exactly like those which we have, with the addition of a condition of re-routing of adjacent highways. The trial court had construed the provisions of the lease as giving the lessee the right of termination only for a subsequently enacted or adopted law, ordinance or regulation directly affecting the physical use of the premises and not one regulating the business transacted thereon apart from its location, and held that the war-time regulations of the Federal government did not have that relation. In a well-considered opinion, in Orme v. Atlas Gas & Oil Co., Minn., 13 N. W. 2d 757, 761, the Supreme Court construed the terms of the lease to authorize its cancellation under those conditions. It declared:

'' 'Use' of premises by a lessee under a lease for the operation and conduct of a certain business thereon is nothing more than transacting such business. * * * As employed in the lease in the instant case, use of the premises consisted of selling the products and furnishing the services in the ordinary course of operating and maintaining a filling station. If that use was prevented,

suspended, or limited, it was a ground for the lessee's exercise of the option to terminate the lease.

" 'Limit' means to circumscribe, bound, restrict, confine within limits. See 37 C. J., Limit, p. 664. As used here, the word 'limited' implies a restriction on the amount of business the lessee could transact in the operation and maintenance of the filling station. 'Prevent' means to stop, preclude, frustrate, prohibit. 49 C. J., Prevent, p. 1343. 'Prevented' involves a complete stoppage of business. Rowe v. Atlas Oil Co., 147 La. 37, 84 So. 485. 'Suspend' means to cease or to cause to cease temporarily. As used in the lease, 'suspended' means a temporary cessation of business. The answer shows that during 12 hours of each day and 96 hours of each week business was totally prevented and suspended and that during other times it was very substantially reduced in volume as a result of the regulations."

That court also regarded as significant the commitment of the lessor to protect the lessee's business by binding himself not to erect another filling station within 300 feet of the leased premises.

In Robitzek Investing Co. v. Colonial Beacon Oil Co., 265 App. Div. 749, 40 N. Y. S. 2d 819, 821, it was held that a clause in a lease of a gasoline filling station only related to possible real estate restrictions which might limit the use of the premises and not to a regulation limiting the volume of business. The provision of that lease was not so broad as the one we have before us. It referred only to the lessee being "prevented" from using the property or any part thereof for the stipulated purpose, or if the "use of the premises * * * shall be in any manner restricted for any of the purposes above stated." The Minnesota Court aptly noted the distinction between the terms of that lease and the one like they had and we have. Only the words "prevented" and "restricted" were employed. They are usually used in speaking of property, while the words "suspended or limited" have no such connotation. They may logically and properly refer to the conduct of a business. The New York decision was placed upon the ground noted, the court adding: "If it were the intention of the parties to do so, they could readily have provided for cancellation of the lease in the event of a regulation of defendant's business by employing language to that effect."

In First National Bank of New Rochelle v. Fairchester Oil Co., 267 App. Div. 281, 45 N. Y. S. 2d 532, the condition of cancellation of a lease clearly and specifically related to possible real estate restrictions which might limit the use of the premises. The clause contained no such provision as in the lease in the case at bar.

Another case which may be noted is Buell v. Indian Refining Company, 62 Ohio App. 108, 23 N. E. 2d 329, 330, in which the lease of a filling station contained a provision very much like the one before us. It gave the lessee the option of terminating the lease "If * * * the use of the said premises as an oil and gasoline filling station be prevented, suspended, or impaired by any zoning law or any other municipal or governmental action, or valid law, ordinance, regulation or by the widening, altering, or improving of any street or highway fronting, or adjoining, said premises," etc. A nearby bridge was torn down and the highway re-routed away from the filling station, which it was alleged "prevented, suspended and impaired the use of the premises and rendered them wholly unfit for the purpose for which they were leased." The court held the tenant had the right to cancel the lease. It is said in the opinion that the decision depended "upon the connotation of the noun 'use' and the verb 'impaired' in the setting in which we find them," and it is pointed out that the demurrer to the pleading admitted that the premises had been rendered wholly unfit for use as a filling station. The "altering" of the abutting highway was a specific condition of the cancellation option, and the court held that it impaired the use of the premises. By a strict construction that condition may be said to distinguish the case. But after all that was only the manner in which the use of the property was impaired. The important and controlling thing was the result—the impairment of the business. But as the court said: "The provision clearly points to the 'use' of the premises as a filling station as the subject." So the court adopted a definition of the word "use" which enabled it to say in conclusion: "It seems to us that the 'use' was impaired by that obstruction or diversion and that it was an alteration of the highway, and, that it also embraced within the omnibus provision of the lease—'any other cause not within the control of Indian.'"

The occupancy or right of occupancy of the property

as a filling station was in no way impaired but the volume of business was. As there, so here.

Finally, as stated in 32 Am. Jur., Landlord and Tenant, Sec. 831: "Where an option given to one or to both parties to terminate a lease is ambiguous, it may be affected by the well-established principle of construction that where a grant is doubtful it will be construed in favor of the grantee."

Therefore, we construe the contract as having given the lessee the option of terminating the lease under the conditions which have arisen. And since it exercised the option in the manner stipulated and vacated the property, the plaintiffs are not entitled to judgment for subsequent rent.

Judgment reversed.

Whole Court sitting.

Chief Justice Fulton and Judge Cammack dissenting.