## Heidelberg Brewing Co., Inc., v. E. F. Prichard Co., Inc.

February 25, 1947.

Rodney G. Bryson, Judge.

Sawyer A. Smith and Stanley Chrisman for appellant.

R. W. Keenon, Marion W. Moore and A. E. Funk, Jr., for appellee.

OPINION OF THE COURT BY MORRIS, COMMISSIONER—
Affirming.

This appeal is an aftermath of results of appeals by the same parties, reported in 297 Ky. 788, 180 S. W. 2d 849. It is sufficient for present purposes to refer to that part of our opinion which is relative here. The trial court's first judgment had in part based the quantity of product to be furnished appellee on malt which might be used in manufacturing. We concluded that such should be eliminated, and the quantity to be supplied be more definitely described as "such quantities as may be bottled in pints, quarts, or half gallons at the E. F. Prichard Company's direction by the use of 70 per cent of the number of crowns supplied that company by the Brewing Company during the corresponding period of 1941." We said that appellee had the right to designate the size of the containers on which the allotted crowns should be employed, and, according to the contemporaneous construction by the parties, appellee could obtain four times as much beverage by directing that it be bottled in half gallons rather than in pints, the quantity to be measured by the crown provision.

Following our mandate the chancellor amended his

former order to conform to our opinion. On July 22, 1946, the court on appellee's motion redocketed the case for such proceedings as appellee considered might comport with the order, and sustained its motion for a rule against appellant to show cause why it should not be held in contempt because of failure to observe the order. An affidavit filed in support set out the last judgment, and stated that appellee had requested appellant to furnish it a quantity of beer and ale in half gallon sizes, and appellant had wilfully refused to comply, which appellee believed was in contempt of the amended mandatory order.

Rule issued and the president of appellant company filed response in the form of an affidavit, which admits non-compliance with appellee's request, whatever that request was. We say this because of confusion as to what beverage was involved, according to the affidavit and the letter of July 8, which appears to be the "request" of appellee. The affidavit stated that appellee was contending that it was asking delivery of 20,000 cases of Old Time Ale. The letter which is on file with the affidavit merely requests that instead of 10,000 cases of quarts appellant should deliver, beginning July 15, the quantity in half gallons, or as an alternative the same quantity in smaller containers. It appears from proof that what was ordered and had been furnished appellee, was not a true ale but a mixture of beer and ale, and that it had furnished beer in half gallon containers.

Taking up appellant's reasons for failure to comply with the request we find them to be substantially: (1) that appellant had exceeded appellee's quota of caps and crowns for the year 1946; (2) the half gallon containers would require a special label, this due to the fact that the label on half gallon bottles required it to state the quantity, and that the containers should bear a label directing constant refrigeration, due to the fact that draught beer was not pasteurized and would spoil if not kept at a certain temperature. It was contended (3) that appellant had no half gallon containers, and no cases in which to pack them; that it had ceased to bottle in half gallon containers; (4) that it had dismantled its machinery used in bottling half gallons, and rebuilt it for bottling quarts, and (5) had dispensed with the half gallon refrigerating room

and (as appears in proof) was now using it to refrigerate "Mr. Prichard's quarts." (6) No price had been fixed.

Taking up first the cap or crown question, it was said that under the contract appellee was entitled to 302,220 caps to be used on its product during July 1946, and that it had delivered 415,472 caps that month, and would deliver on July 30th and 31st, 48,000 more. It appears from the record that of the number of caps delivered, 240,000 were used on pints and 178,200 on quarts. This was up to July 27. We have not stopped to make a close calculation, but it seems that if appellant desired, and was in position to use half gallons instead of quarts, since a case of half gallons required six caps, and quarts 12 caps, the number of caps might have been materially reduced, at least in part compliance. Witness for appellant does not testify at length on the question of caps or crowns, and we take it from the proof and from appellant's brief that this is not appellant's major reason in not complying with the request of appellee. It may be assumed that the matter of crowns may be regulated or adjusted to keep within the contract.

As to labels, and this contention seems to be particularly urged, we might say that it does not appear from the record that appellee sought to have appellant furnish draught or non-pasteurized beverages. The fact that it gave appellant the alternative to furnish the quantity represented by so many half gallons, to be bottled in pints, would indicate that the beverage sought was not a draught beverage. Furthermore we find that the contract does not require appellee to furnish labels. It provides that the second party shall manufacture, bottle, cap, label and prepare completely for market; perhaps a different provision relating to "Old Town" ale. However, this may be, the proof shows that at some period, while beverages were being supplied, the appellant had agreed to procure labels because it could obtain them cheaper than could appellee. Appellant could hardly complain on this ground, since it is admitted that it did not make any effort to obtain labels or to make request of appellee to do so.

It is contended that no price had been agreed on for the beverage if put up in half gallon sizes. It is not contended that there was no fixed price on the alternative pints. The contention was based on the ground that

there had been furnished no half gallons "during the previous month of this year 1942," the price basis fixed in the contract. Mr. Prichard says he was not sure whether he had obtained half gallons in August 1942, but he says he did so in September and October, apparently without disagreement as to price. We take it the price related more to character and quantity, though there may be a difference according to the size of containers, which appellant's witness did not undertake to explain satisfactorily. It may be said that had appellant undertaken to comply with the request and accepted the shipment, the market price would have prevailed. However, as we read the contract, it provided that prices should be subject to changes at stated periods, the revision to be based on the "prevailing prices of ingredients, labor and other costs as compared with their prices prevailing at the time of the contract." Since there was no effort to agree on price, if such an agreement was necessary, we fail to see that this was a valid reason for non-compliance.

The contentions as to inability to supply because of lack of half gallon containers and cases, and the transformation of machinery and lack of refrigeration space, do not appear to be sufficiently founded to excuse appellant from complying with the alternative request. It was said by appellant that it had abandoned the sale of its beverages in half gallon containers, and was unable to obtain a sufficient number of such to comply; that in order to comply it would have to purchase 6,000 cases and 360,000 half gallon containers. We fail to see why this was so, and it is not explained. On proof it was shown that appellant had on hand 750 or 800 cases of half gallon containers; this would mean that it had 4500 of such containers which it could have furnished. Whatever may have been the bottle and case situation, it was not shown that a like quantity of beverage could not have been supplied in smaller containers, the crown matter being adjusted to fit the situation.

It was said that the machinery which had been used for bottling half gallons had been rebuilt for bottling quarts, how or in what manner the change was made is not developed. As to rearrangement the witness merely said, "You would have to rearrange your brewery property and get permission from the Internal Revenue

Department." Evidently this referred to refrigeration, since witness said: "We have dispensed with that refrigeration room and are now storing Mr. Prichard's quarts."

Insofar as the matter of change of machinery and rearrangement of the premises are concerned, it may be pointed out that witness says the use of half gallon containers had been abandoned around "six months or more ago." The change of premises must have occurred about the same time. He was testifying on July 29, 1946. It should be remembered that this court in its opinion rendered May 5, 1944, had said that appellee had the right to have such beverages (including ale), as he was entitled to under the contract, bottled in half gallons if so directed. Such changes and discontinuances as are shown were without the knowledge or consent of appellee.

On submission the chancellor who heard the proof orally, held the response insufficient and adjudged appellant in contempt in its failure to follow the last judgment. The chancellor did not fix any penalty, so the effect of his order was a reaffirmation of the last judgment, and a holding that appellant had not sufficiently shown that it could not, within the terms of the contract, comply with appellee's request. Counsel for appellant contends that the response was sufficient to show inability to comply with appellee's request, and cites Tucker v. Com., 299 Ky. 820, 187 S. W. 2d 291 and Barrett v. Barrett, 287 Ky. 216, 152 S. W. 2d 610. In the first case we agreed with the chancellor who concluded that it was not impossible for certain officers to produce some missing slot machines. We did say that the inability to obey the order, without fault on part of the contemner, was sufficient to purge him of the contempt charged, but said that where the one charged has voluntarily brought on himself disability he cannot avail himself of the inability plea. In the latter case we wrote that the process of contempt is discretionary, and where a litigant, bound by a judgment, makes a good faith effort to comply, but it is impossible for him to do so, no court would use the process for the purpose of punishment.

The chancellor here heard the proof orally, and apparently concluded that the proof as to inability was in-

sufficient, a lack of good faith effort to comply with the order. We do not find enough in the record to authorize us to say that the chancellor abused his discretion.

Judgment affirmed.

Judge Rees not sitting.