# Knight et al. v. Hamilton

May 26, 1950.

Rehearing denied December 1, 1950.

K. S. Alcorn, Judge.

James F. Clay for appellants.

Joe G. Davis, Chenault Huguely, Henry G. Sandifer and Pierce Lively for appellee.

JUDGE REES—Affirming.

This is an appeal by Brady Knight and Fred W. Turnbull, partners doing business as Danville Tire & Service Company, from a judgment prohibiting them from breaching certain restrictions contained in a deed dated March 7, 1945, and in a contract of the same date between the grantors and grantees in the deed. The grantors in the deed were Robert B. Hamilton and Mary G. Hamilton, his wife, and the grantees were Howard W. Stigall, Fred W. Turnbull and Brady Knight. Stigall died in 1947, and his interest in the property conveyed by the deed of March 7, 1945, was acquired by Turnbull and Knight, The appellee, Hamilton, has been for many years a commission agent of the Standard Oil Company of Kentucky for Boyle County. He sells to retail dealers gasoline and other petroleum products at the posted tank wagon Standard Oil prices, and charges all dealers the same current prices irrespective of the amount of their purchases. He sells petroleum products to ten or twelve dealers in Boyle County who handle Standard Oil Company products exclusively. The property conveyed by the deed of March 7, 1945, is a triangular lot

of ground with improvements thereon fronting on Alta Avenue and Stanford Street in Danville, Kentucky, and has been used as a retail gasoline service station for many years. Appellee leased the property for about twelve years, and subleased it to retail gasoline dealers who handled Standard Oil Company products. He purchased the property on June 1, 1944, for $14,100, and leased it to Stigall, Turnbull and Knight until they purchased it on March 7, 1945, for $14,414.87, the amount Hamilton had paid for it plus the cost of repairs made by him. The deed from Hamilton to Stigall and appellants contained this provision:

"It is further understood and agreed that as a part of the consideration for this conveyance that this conveyance is made subject to the specific terms and conditions imposed upon the grantor Robert B. Hamilton, and all of the grantees in a certain contract dated the 7th day of March, 1945, and recorded in Deed Book 74, page 47, in the Office of the Clerk of the Boyle County Court, wherein said contract there are imposed upon the grantees certain terms and conditions as to the use of the property herein sold and as to the use of it by their successors, heirs or assigns, or any combination of the present grantees or successors and that all of the terms therein said contract concerning the use of the property herein sold are incorporated herein as covenants concerning the use of this property and are covenants running with the land and shall bind the grantees, their successors and assigns, or any combination of grantees and their successors. Such terms therein said contract are to apply under the terms of this deed as fully as if copied herein and are made a part hereof."

The contract referred to in the deed provides that as a part of the consideration of sale and conveyance of the property the purchasers agree to handle and sell on the premises petroleum products which Hamilton was then handling as distributor of Standard Oil Company products, and in the event he ceases to be the distributor of Standard Oil Company products to handle for a period of five years such petroleum products as Hamilton may handle as a distributor for another company or as an independent distributor. It provides that in the event Hamilton is unable at any time to

furnish a sufficient supply of petroleum products, the purchaser of the property may supplement their needs from other. sources. The restriction as to the use of the property is extended to apply to any successors, assigns or lessees of the purchasers, and the contract concludes:

"In the event Robert B. Hamilton should sever his connection with the Standard Oil Company as a distributor and should be unable to make a connection with another company to supply second parties, or should be unable to supply second parties as an independent distributor for a period of six months after such disconnection with the Standard Oil Company, then the covenant herein as to the sale of such petroleum products is to become null and void, and further in the event that Robert B. Hamilton ceases to be a distributor of Standard Oil Company or another company or an independent distributor, then the restriction herein shall cease and this covenant become null and void."

For several years appellants took from appellee and paid for their requirements of gasoline and other petroleum products at the posted tank wagon Standard Oil prices without objection. On February 12, 1949, appellants notified appellee that they intended to deduct from his bills 1c a gallon on gasoline and 2½c a gallon on motor oil beginning March 1, 1949. It was their contention that they were entitled to this concession because of the volume of business done by their gasoline station. It seems that this station when acquired by appellee under a lease and subleased by him was selling between 3,500 and 4,000 gallons of gasoline a month. This was about 1932. The sales increased to 196,579 gallons during the last nine months of 1945, and to 408,463 gallons in 1948. The proof establishes that appellee, during the many years he has been the distributor of Standard Oil Company products in Boyle County, has never granted a price discount to any dealer on account of the volume of business or for any other reason. It seems that the prices of Standard Oil Company products vary slightly from county to county due to the differences in transportation costs from Louisville and probably other factors, but the prices to dealers within the county are the same regardless of the amount purchased by the various dealers. Ap-

pellee refused to grant to appellants the discount demanded by them and thus to discriminate against his other customer dealers, and beginning March 1, 1949, appellants refused to purchase any petroleum products handled by appellee. This action to compel appellants to comply with the terms of the deed and contract of March 7, 1945, followed.

Appellants argue that the contract is ambiguous and should be construed against the one for whose benefit it was written, and, further, that the restrictive covenants in the deed should be construed strictly against appellee who is seeking to enforce them. It is also argued that the contract is severable, and that the executory part thereof, the future delivery of petroleum products, cannot be enforced because the contract lacks mutuality of obligation and is not clear and concise as to its terms.

We find no ambiguity in either the deed or contract, nor do we think the contract is severable. The provisions of the contract are incorporated in the deed by reference, and the parties evidently intended the two instruments to be treated as one. Obviously, two instruments were drafted for reasons of convenience. One of the principal considerations for the sale of the real estate was the promise of the grantees to purchase the petroleum products handled by the appellee. In determining whether a contract is severable, the intention of the parties is a controlling factor. As said in Business Men's Assurance Co. of America v. Eades, 290 Ky. 553, 161 S.W.2d 920, 922: "Primarily the question of whether a contract is entire or severable depends upon the intention of the parties, the objects to be obtained and the common sense of the situation." Here, the parties specifically stated that appellants' promise to buy their requirements of petroleum products from appellee was part of the consideration for the sale of the real estate and this, under the circumstances, was the "common sense of the situation." It is obvious that appellee would not have entered into the contract and conveyed his real estate without this provision. The specific prices to be paid for the products were not fixed, but the parties were familiar with the custom of the trade in this respect, and appellants had been purchasing from appellee exclusively for several

months Standard Oil products at the Standard Oil posted tank wagon prices. They continued for more than four years after the execution of the deed and contract to pay these regular posted prices without complaint to appellee. Clearly, the parties contracted in the light of the trade custom and their past relations, and understood the prices to be charged and paid. Appellants admitted in their testimony that they ceased to handle Standard Oil Products solely because appellee refused to discriminate against his other customers in Boyle County and grant appellants a discount on account of the increase in their volume of sales. The contract provided that if appellee was unable at any time to furnish appellants' requirements they could purchase their needed supplies of petroleum products from other distributors. Appellee was impliedly required to furnish their requirements, and in the event he was unable to do so for any reason they were free to purchase petroleum products elsewhere. The contract, if not definite as to quantity and prices, is capable of being made definite and is enforceable. We find no lack of mutuality of obligation in the contract. Heidelberg Brewing Company v. E. F. Prichard, 297 Ky. 788, 180 S.W.2d 849; Fowler's Bootery Co. v. Selby Shoe Co., 273 Ky. 670, 117 S.W.2d 931; Mills-Morris Co. v. Champion Spark Plug Co., 6 Cir., 7 F.2d 38. An important rule of interpretation is that which favors a construction of a contract as bilateral, affording protection to both parties, rather than unilateral. Restatement of Contracts, section 31.

Appellants insist that an injunction should not have been granted because it will require continuous supervision by the court to carry out the terms of the contract. The judgment is simple and easily complied with, and no supervision by the court should be necessary. All that is required is that appellants continue to operate as they operated for four years after the contract was entered into. Restrictions imposed in a deed on the use of real estate are valid and binding provided such restrictions are reasonable and limited as to territory and duration. Ladd v. Pittsburgh Consolidation Coal Co., 309 Ky. 405, 217 S.W.2d 807, and the recent case of Trosper v. Shoemaker, 312 Ky. 344, 227 S.W.2d 176, where similar restrictions in a deed were held valid and enforceable. The restrictions in the deed before

us fall within this proviso and it is not otherwise contended, but appellants do argue on authority of Standard Oil Company of California v. U. S., 337 U.S. 293, 69 S.Ct. 1051, 93 L.Ed. 1371, that the contract binding them to purchase their requirements of petroleum products from appellee exclusively is in restraint of trade and illegal. The decision in the Standard Oil Company of California case has no bearing on the present case. There, the court in a five to four decision held that, under the evidence which showed that the Standard Oil Company of California entered into exclusive supply contracts with a large number of independent dealers in petroleum products and automobile accessories, the affected portion of retail sales of petroleum products was substantial, and, consequently, the exclusive supply contracts were violative of section 3 of the Clayton Act, 15 U.S.C.A. sec. 14, which provides that it shall be unlawful for any person to enter into an exclusive supply contract where the effect of such contract "may be to substantially lessen competition or tend to create a monopoly in any line of commerce." The court held that the requirement of showing that the effects of the agreements "may be to substantially lessen competition" may be met simply by proving that a substantial portion of commerce is affected. The Standard Oil Company of California had entered into about 8,000 exclusive supply contracts in seven western states termed in the proceeding the "Western Area." The company's sales amounted to 23% of the total gallonage sold in the area. It was held that the proof was sufficient to fulfill the qualifying clause of section 3 of the Clayton Act that the effect of the practice "may be to lessen competition." The decision did not outlaw all exclusive supply contracts, but only such contracts as come within the qualifying clause of section 3 of the Clayton Act as shown by proof. There was no proof in this respect in the present case, and the case relied upon by appellants, therefore, has no application. Pick Manufacturing Co. v. General Motors Corporation, 299 U.S. 3, 57 S.Ct. 1, 81 L.Ed. 4.

The judgment is affirmed.