## Frazier et al. v. Collins et al.

May 15, 1945.

J. L. Hays for appellants.

W. H. Lewis, Emmett G. Fields, and H. L. Moore for appellees.

OPINION OF THE COURT BY JUDGE REES—Reversing.

This is an appeal from a judgment of the Letcher circuit court modifying a lease contract because of changed conditions due to Federal wartime regulations and restrictions. The appellees have failed to file a brief, and we shall accept the statement of facts in appellants' brief.

On June 28, 1938, J. H. Frazier and Usley Frazier, his wife, entered into a written contract of lease with the appellee D. W. Little wherein they leased to him for a period of five years a small parcel of land, including improvements, located on Main Street in Whitesburg, Kentucky. The premises were to be used as a gasoline filling and service station, and for such other businesses as are generally connected with service and filling stations, such as sale of tires, accessories, equipment, soft drinks, etc., as well as repairing, greasing, washing and servicing automobiles and other motor vehicles. The lease provided for a rental consideration of $100 per month, payable in advance on or before the fifth day of any current month thereafter. This was a renewal of a lease entered into between J. H. Frazier and D. W. Little for a term of ten years, beginning June 28, 1928. On December 30, 1940, D. W. Little assigned the lease to appellees S. A. Collins and R. F. McClure, who took

possession of the premises on January 15, 1941, and operated a gasoline filling and service station until the judgment in the present case was entered on July 9, 1943. On January 9, 1939, J. H. Frazier, in a proceeding in the Letcher circuit court, was adjudged to be mentally unsound and incompetent to manage his affairs, and J. L. Hayes was appointed and qualified as his committee. On June 26, 1942, S. A. Collins and R. F. McClure brought this action against D. W. Little, Usley Frazier, J. H. Frazier, and J. L. Hayes, committee for J. H. Frazier, in which they sought to have the contract of lease modified and changed to provide for a monthly rental of $35. They alleged that the rationing of gasoline by the Federal Government and its regulations of the sales of automobile tires and inner tubes had materially affected their business and had reduced their sales to less than 50 per cent of their sales before the imposition of the restrictions, and that at the time the contract of lease was entered into neither they nor the contracting defendant, D. W. Little, contemplated or took into consideration the happening of any such contingency as Federal regulations or laws preventing the sale of tires, inner tubes, gasoline, oil and other essential products connected with the operation of a service station. The defendants filed an answer and cross-petition, and D. W. Little was summoned on the cross-petition. Judgment was asked against him for the unpaid rentals. On submission of the case the court adjudged that it would ''be unjust and inequitable to require the plaintiffs or the original lessee, D. W. Little, to pay the full rental of $100.00 per month provided for in said lease contract, and they should be, and are hereby relieved from paying in excess of $35.00 per month for all payments which have come due since the institution of this suit on the 26th day of June, 1942, and said lease contract and assignment thereof are hereby cancelled as of the date of this judgment, and all parties are relieved from further obligation under said lease contract or the assignment thereof to the plaintiffs, except for the payment of any rental now remaining unpaid at said reduced rate of $35.00 per month as hereinbefore directed.''

The question presented by this appeal, as stated in appellants' brief, ''is whether or not the lessee or sublessee of premises rented for the purpose of operating a filling station will be absolved or discharged from his

written obligation simply because, due to war conditions, there has been a partial failure of the purpose for which it was rented; his profits reduced and the performance of his contract become more burdensome because of Federal restrictions on merchandise handled by him on the premises.'' The general rule is that a party to a contract will not be relieved of the obligations undertaken by him merely because supervening events have rendered the contract unprofitable, even though the supervening event be a law, regulation or other governmental act. Eminence Distillery Company v. Fremd, 191 Ky. 191, 229 S. W. 369; Columbus Railway, Power & Light Co. v. Columbus, 249 U. S. 399, 39 S. Ct. 349, 63 L. Ed. 669, 6 A. L..R. 1648; London & Lancashire Indemnity Co. v. Board of Commissioners, 107 Ohio St. 51, 140 N. E. 672; Restatement, Contracts, vol. 2, sec. 467. It is only where the governmental act makes unlawful the obligation assumed under a contract, prohibits its performance or otherwise renders performance impossible that the obligor will be excused from further performance. Louisville & N. R. Co. v. Crowe, 156 Ky. 27, 160 S. W. 759, 49 L. R. A., N. S., 848.

The doctrine of dissolution of a contract by reason of the frustration of its commercial object, which is akin to the doctrine of impossibility of performance, was first adopted by the courts of England (Krell v. Henry, C. A., [1903] 2 K. B. 740), but the English courts have refused to apply the doctrine of commercial frustration to contracts of lease on the ground that an estate is conveyed to the lessee which carries with it all risks. Whitehall Court v. Ettlinger, 89 L. J. K. B., N. S., 126; 137 A. L. R. 1224. A majority of the courts of this country hold that the doctrine is applicable to leases, but the great weight of authority is to the effect that in all cases, whether the contract is one of lease or otherwise, the doctrine is limited to cases of extreme hardship. In Williston on Contracts, Vol. 6, section 1954, the author, in discussing the question, says:

''The doctrine of frustration has been applied by the American courts under a variety of circumstances since the decision of the coronation cases, on the ground that the facts involve a failure of consideration despite the possibility of literal performance.

''A promise will not be discharged, however, because the performance promised in return has lost value

on account of supervening fortuitous circumstances unless they nearly or quite completely destroy the purpose both parties to the bargain had in mind.''

And in section 1955 of the same work it is said:

''Any relief granted the tenant, however, should consist in avoidance of the lease, not simply of his covenant to pay rent. He should be liable for the rent so long as he retains possession.

''Even more clearly with respect to leases than in regard to ordinary contracts the applicability of the doctrine of frustration depends on the total or nearly total destruction of the purpose for which, in the contemplation of both parties, the transaction was entered into.''

Several cases involving contracts similar to the one before us have been considered by the courts since the present emergency arose. In Wood v. Bartolino, 48 N. M. 175, 146 P. 2d 883, 890, the cases are reviewed, and the court, in discussing the doctrine of commercial frustration, said:

''If this rule should be applied to leases, then it should be limited to those cases where the law or rules, regulations and orders have made illegal or prohibited absolutely the conducting of the business contemplated by the parties.''

In Mid-Continent Petroleum Company v. Barrett, 297 Ky. 709, 181 S. W. 2d 60, 62, the question presented was the right of the lessee to cancel a lease of a lot upon which it had erected a gasoline filling and service station because of the effect of the Federal wartime restrictions in relation to the business conducted and products handled on the premises. The lease contained a provision which permitted the lessee to cancel the lease if, during the term, the use of the premises for an oil and gasoline filling station should be limited by any governmental action or valid law, ordinance or regulation. We construed this provision as having given the lessee the option of terminating the lease under the conditions which had arisen, but it was pointed out in the opinion that in the absence of such a provision the lessee would have been bound to carry out the terms of the lease. After reviewing a number of recent decisions on the subject from other jurisdictions, we said:

"It does not appear that in any of those cases involving war-time restrictions or regulations there was a clause in the lease providing for its cancellation such as is contained in the lease in this case. For the courts to have held otherwise would have seriously affected nearly every lease of commercial property for there is scarcely any business, particularly mercantile, which has not been diminished, made less profitable and more difficult to conduct by the innumerable restrictions and governmental regulations.

"Therefore, the decisions are in complete accord with an elementary principle of the law of contracts that when a party engages without qualification to do an act, his performance is not excused because it becomes onerous or unprofitable. It is deemed his own fault if he does not expressly provide against contingencies and exempt himself from responsibility in certain events."

We think that in the present case the lessees had no right to terminate the lease, and, certainly, no right to require a modification of the lease, which, in effect, made a new contract for the parties.

The judgment is reversed, with directions to dismiss plaintiffs' petition, and to enter judgment against D. W. Little on the cross-petition for the unpaid rent.