# United States Court of Appeals
## For the First Circuit

No. 07-1992

D. BRUCE WHEELER,

Plaintiff, Appellee,

v.

RYAN T. BLUMLING,

Defendant, Appellant,

PARSONS 4E, LLC; TERRY EBELS; FRANK ZARRELLI;
RABON WOLFORD, SR.; THOMAS G. POLANSKY,

Defendants.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Rya W. Zobel, U.S. District Judge]

Before

Torruella, Circuit Judge,
John R. Gibson, Senior Circuit Judge,[*]
and Lipez, Circuit Judge.

Mitchell J. Rotbert, with whom Rotbert Law Group, LLC,
was on brief for appellant.
Laurence M. Johnson, with whom Davis, Malm & D'Agostine,
P.C., was on brief for appellee.

March 25, 2008

[*]Of the Eighth Circuit, sitting by designation.

**JOHN R. GIBSON, <u>Senior Circuit Judge</u>**.  Ryan T. Blumling appeals from the district court's entry of summary judgment against him in favor of D. Bruce Wheeler, on Wheeler's claim for breach of a guaranty agreement.  Blumling contends that he has two defenses to liability on the guaranty:  frustration of purpose of the contract and modification of the guaranty by oral agreement.  We affirm the judgment of the district court.

Blumling is a loan broker.  In March 2004, Frank Zarrelli of Parsons 4E, LLC, contacted Blumling for help in finding a short-term loan to supply money Parsons needed to buy a financial guaranty bond from Allianz, A.G.  Parsons needed the bond to enable it to get bank financing for coal mining operations in Kentucky.  Blumling went to work and located Wheeler as a possible lender for the short-term loan.  The note was to be secured by a security interest in various coal properties and by guaranties from the principals of Parsons, but Wheeler insisted on getting a guaranty from Blumling as well.  Blumling states that he told Wheeler,

> I did not think that it was appropriate for me to guarantee the Note, as I was merely a broker for the loan, but Mr. Wheeler insisted that, unless I guaranteed the loan, he would not lend to Parsons 4E . . . .

> Without any alternative, and being under pressure to perform quickly to satisfy the reported needs of Allianz, I advised Mr. Wheeler that I would execute a guarantee, provided that Mr. Wheeler understood and agreed that I would not thereby become liable for an amount greater than the principal amount loaned and that I would not be called upon to pay any amounts before Mr. Wheeler had exhausted his remedies under the assignment by foreclosing on his security interest as stated in the

Collateral Assignment I had arranged. Mr. Wheeler agreed . . . . In reliance on Mr. Wheeler's representations, I signed the guaranty.

The note itself called for a rather breathtaking interest rate--the loan was for $625,000 to be disbursed on March 12, 2004, to be repaid with interest for a total of $1.4 million due on April 24, 2004. Though the parties dared not name the interest rate at oral argument, we calculate it at over 1000% per annum. The guaranty Blumling signed, however, did not make him liable for that rate of interest, but instead provided:

> [I]n no event shall the amounts due Lender under this Guaranty exceed the sum of $625,000 plus interest from the date hereof until paid in full at 2% per month (or such lesser amount as shall be the maximum amount allowed by law) plus reasonable attorneys fees and expenses in connection with enforcement of this Guaranty . . . .

There were several other clauses in the guaranty of particular interest in this litigation:

(1) The guaranty recited that Blumling had a personal interest in the success of Parsons, that Wheeler would not make the desired loan to Parsons without Blumling's guaranty, and that the guaranty was executed to induce Wheeler to make the Parsons loan.

(2) The guaranty also said that Wheeler might "at [his] option, proceed against [Blumling] without ever commencing any action, or ever obtaining any judgment against [Parsons] or any collateral for the obligations guaranteed hereunder." A later clause similarly provided, "This Guaranty . . . is in no way

conditioned upon any requirement that [Wheeler] first attempt to collect or enforce any of the obligations under the Note from or by [Parsons] or any other party primarily or secondarily liable with respect thereto, or resort to any security or other means of obtaining payment or satisfaction of any of the obligations of [Parsons] to [Wheeler]. . . ."

(3) "No provision of this Guaranty may be changed, waived or discharged except by an instrument in writing signed by [Wheeler] and [Blumling] and expressly referring to the provision of this Guaranty to which such instrument relates . . . ."

(4) The guaranty stated that it would be governed and construed in accordance with the law of Kentucky.

Upon execution of the note and the guaranties, Wheeler disbursed the $625,000 as Parsons directed, including wiring $562,500 directly to Parsons' bond broker Wayne Price, who was supposed to be arranging the purchase of the bond from Allianz. Blumling states that although the "Allianz bond was issued in April 2004, . . . it was not financed . . . [and] Allianz and its subsidiaries would not recognize it as a legitimate instrument issued by one or more of them." Wayne Price and his associates were indicted in the Southern District of New York on charges of conspiracy and wire fraud. In particular, they were accused of appropriating for themselves moneys their clients had paid to obtain bonds from a subsidiary of Allianz, A.G. Parsons tried

-4-

without success to obtain the return of its premium.

As a result of its bond fiasco, Parsons defaulted on its obligation to pay Wheeler $1.4 million on April 24, 2004. In December 2004, the various parties and guarantors to the Parsons/Wheeler note executed a "Forbearance Agreement." In exchange for an extension of time to pay, Parsons acknowledged its indebtedness on the note and, in Section 3 of the Forbearance Agreement, agreed to waive any possible defenses on the note or counterclaims. Although the body of the Forbearance Agreement related only to Parsons's obligations, Blumling signed an attached signature page with the following statement: "The undersigned consents to the foregoing, joins in the release under Section 3 above, and agrees that his Guaranty remains in full force and effect." Parsons did not make any of the payments in accordance with the terms of the Forbearance Agreement.

Wheeler brought this suit against Parsons, the other guarantors, and Blumling. Parsons and the other guarantors settled, but Blumling did not.[2] Wheeler moved for summary judgment against Blumling, which the district court granted.

We review de novo the district court's grant of summary judgment. Plumley v. S. Container, Inc., 303 F.3d 364, 369 (1st Cir. 2002).

_____

[2]Blumling stated, both in an affidavit and in his brief to this court, that Wheeler has not executed in any way on the judgment he obtained against Parsons and the other guarantors.

Blumling contends that under the applicable Kentucky law, he should be excused from performing his obligations under the guaranty because the misappropriation of the proceeds by the bond broker frustrated the purpose of the contract or rendered impossible Blumling's performance. Blumling's argument is properly characterized as one of frustration of purpose rather than of impossibility,[3] for he argues that the value to him of the loan secured by the guaranty was destroyed by the defalcations of the bond broker.

Actually, the value of the loaned money was not affected, but the proceeds of the loan were lost by the borrower. Suffice it to say, none of the authorities cited by Blumling stands for the rule that a borrower's (or his guarantor's) obligation to repay borrowed money depends on the success of the venture on which he spent the money. The only precedential Kentucky case on which Blumling relies, Frazier v. Collins, 187 S.W.2d 816 (Ky. 1945),

---

[3]    The doctrine[s] of commercial frustration and impracticability [i.e., impossibility] both concern the effect of supervening circumstances upon the rights and duties of the parties; however, with commercial frustration, performance remains possible, but the expected value of performance to the party seeking to be excused has been destroyed by the fortuitous event which supervened to cause an actual, but not literal, failure of consideration.

30 Richard A. Lord, Williston on Contracts § 77.95, at 596 (4th ed. 2004).

rejected the frustration defense in the case before it and held that "when a party engages without qualification to do an act, his performance is not excused because it becomes onerous or unprofitable. It is deemed his own fault if he does not expressly provide against contingencies and exempt himself from responsibility in certain events." Id. at 818-19 (internal quotation marks omitted). The district court did not err in rejecting Blumling's frustration of purpose defense.

Second, Blumling argues that he and Wheeler orally modified their contract, including the provision in the contract that required modifications to be in writing. He contends that the modified terms were that "Blumling would not be liable on his guaranty until such time as Wheeler had executed against Parsons 4E's assets" and that "in any event, Blumling would not be liable for more than the principal amount that Wheeler had loaned to Parsons." The problem with this theory is that there is no evidence of a modification after the guaranty was executed. Blumling's own affidavit alleges that he negotiated these two conditions with Wheeler before executing the guaranty:

> I advised Mr. Wheeler that I would execute a guarantee, provided that Mr. Wheeler understood and agreed that I would not thereby become liable for an amount greater than the principal amount loaned and that I would not be called upon to pay any amounts before Mr. Wheeler had exhausted his remedies under the assignment by foreclosing on his security interest as stated in the Collateral Assignment I had arranged. Mr. Wheeler agreed . . . . In reliance on Mr. Wheeler's representations, I signed the guaranty.

-7-

However, the guaranty as executed contradicts both the conditions, expressly providing that Blumling's liability did not depend on Wheeler first proceeding against the debtor, any other guarantor, or the collateral, and that Blumling would be liable for the principal amount plus two percent interest and reasonable attorneys' fees. Blumling's affidavit says that he later "reconfirmed" the two putative conditions with Wheeler's agent, but he steadfastly contends that those were the terms negotiated before the contract was memorialized, rather than being changes negotiated afterwards. Moreover, his affidavit only states that _he_ "reconfirmed" his understanding of the contract, not that Wheeler's agent agreed to any change.

Thus, Blumling's evidence does not support a modification of the agreement, but rather consists of assertions of prior oral negotiations that contradict the written instrument he executed. The parol evidence rule is a rule of substantive law under which,

> [w]here the parties put their engagement in writing all prior negotiations and agreements are merged in the instrument, and each is bound by its terms unless his signature is obtained by fraud or the contract be reformed on the ground of fraud or mutual mistake, or the contract is illegal.

Childers & Venters, Inc. v. Sowards, 460 S.W.2d 343, 345 (Ky. 1970). Blumling does not argue that the whole contract was obtained by fraud or that the parties meant it as a sham contract; instead, he only wants to contradict particular terms of a contract which has already been performed on Wheeler's side and of which

-8-

Blumling has already enjoyed the benefits (fleeting though they were).  This is exactly what the parol evidence rule forecloses.  See Lewis v. Owens, 338 F.2d 740, 742 (6th Cir. 1964) (Kentucky law).

Since we conclude that Blumling's defenses are unavailing, we need not consider the arguments regarding whether he waived such defenses in the Forbearance Agreement.

We AFFIRM the judgment of the district court.