LAMBERT, J., JUDGE:
Jackson Hospital Corporation d/b/a Kentucky River Medical Center (the Hospital) has appealed from the summary judgment of the Breathitt Circuit Court in favor of United Clinics of Kentucky, LLC (the Practice) related to the breach of a contract of employment for Dr. Hadi Abu Rasheed to practice medicine at the Hospital. Because we hold that the circuit court erred as a matter of law in granting summary judgment in favor of the Practice and not the Hospital, we reverse.
The underlying matter began with the filing of a complaint by the Hospital on November 12, 2013. In the complaint, the Hospital set forth the supporting facts, which we shall summarize: In 2011, the Practice approached the Hospital about its desire to employ Dr. Rasheed and asked the Hospital to help facilitate his recruitment to the Jackson, Kentucky, area. The three entered into a recruitment agreement on July 18, 2011, and an amended agreement the following month (the agreement). Dr. Rasheed agreed to relocate his practice to Jackson and practice medicine on a full-time basis for 36 months beginning September 15, 2011. Under the terms of the agreement, "[a]ny material breach of this Agreement by Physician and/or Practice, or a failure by Physician and/or Practice to fulfill any material provisions *330 of this Agreement shall entitle Hospital, at its option, to terminate this Agreement immediately." The Practice agreed to be jointly and severally liable for any amounts owed to the Hospital in the event of any breach by the Practice or Dr. Rasheed. Section D 12 of the standard terms and conditions provides, "[t]he Practice and Physician shall be jointly and severally liable for the terms and conditions in this Agreement, including but not limited to, repayments of any monies due to and owed to Hospital under this Agreement."
The agreement detailed the financial arrangements related to Dr. Rasheed's employment and included a guarantee period for cash collections. The agreement established that the practice commitment period was 36 months, with a guarantee period of 12 months and a continuation period of 24 months. Dr. Rasheed's monthly cash collections guarantee amount was $23,350.00. The Hospital advanced $180,187.43,[1] to the Practice and Dr. Rasheed as cash collections guarantee payments during the 12-month guarantee period, an amount that the Practice and Dr. Rasheed were jointly and severally liable to repay at the end of the guarantee period pursuant to § G:
During the Term of this Agreement, Physician and Practice are jointly and severally responsible for reimbursement to Hospital for the sum of the Total Cash Collection Guarantee Payments and/or any other payments made under this Agreement by Hospital regardless of whether the payment was made directly to Physician, jointly to Physician and Practice, directly to Practice to cover Physician's Additional Incremental Expenses, and/or directly to Practice as a pass through to Physician and/or for any reasons whatsoever.
The agreement provided that the debt would be completely or partially forgiven if Dr. Rasheed continued to practice full-time in Jackson for two years at the end of the guarantee period pursuant to § E 9:
During the Cash Collections Continuation period, which shall begin on the day following the last day of the Cash Collections Period and continue for the number of months set forth as the Continuation Period on the Cover Page, Hospital agrees that it will cancel (amortize) one twenty-fourth (1/24th) of the Total Cash Collection Guarantee Payments made by Hospital under this Agreement for each full month Physician remains in the Full-Time Private Practice of Medicine, in Physician's Specialty, in the Community. In the event Physician fails to maintain a Full-Time Private Practice of Medicine in the Community during the Cash Collections Continuation Period, Physician and/or Practice shall immediately reimburse to Hospital the unamortized amount of the Total Cash Collections Guarantee Payments paid hereunder.
In addition, § E 8 provides:
Should the Physician fail to maintain a Full-Time Private Practice of Medicine in the Community during the Cash Collections Guarantee Period, Physician and/or Practice shall immediately reimburse to Hospital the total sum of the Total Cash Collections Guarantee Payments and/or any other payments made by Hospital under this Agreement to Physician and/or Practice to date.
In addition to the amount paid above, the Hospital advanced Dr. Rasheed a commencement bonus of $10,000.00, which was also supposed to be repaid but would be partially or completely forgiven depending *331 on how long Dr. Rasheed practiced in Jackson. See § C 4.
In July 2012, less than one year into the agreement period, the Hospital alleged that Dr. Rasheed stopped his full-time medical practice in Jackson. Therefore, the unforgiven amounts the Hospital advanced became immediately due and payable pursuant to the terms of the agreement. Because the debt had not been repaid, the agreement had been materially breached. The Hospital calculated that it was owed $180,187.43 for the cash collections guarantee payments and $7,222.22 for the unforgiven portion of the commencement bonus for a total of $187,409.65. The Practice did not respond to the Hospital's demand for payment.
Based on this factual background, the Hospital alleged causes of action against the Practice for breach of contract and unjust enrichment. The Hospital sought a judgment from the Practice for the amount owed under the agreement, pre- and post-judgment interest, attorney fees, and costs. In its answer, the Practice stated that Dr. Rasheed's actions were the cause of the breach and, therefore, the cause of any losses the Hospital sustained.[2]
Following discovery, the Hospital filed a motion for summary judgment seeking a judgment in its favor for the amounts owed based upon Dr. Rasheed's and the Practice's material breach of the terms of the enforceable agreement. The agreement did not include any qualification as to the cause of the repayment obligation, but rather it included an express provision that both Dr. Rasheed and the Practice would be jointly and severally liable for repayment. In its response, the Practice stated that Dr. Rasheed left the area after being named as the subject of sexual misconduct allegations involving the staff and child patients, for which he was being pursued civilly and criminally. Therefore, it was impossible for Dr. Rasheed to practice and impossible for the Practice to allow him to continue practicing. Because there was an issue as to whether Dr. Rasheed had the ability to perform under the agreement, the Practice argued that summary judgment was inappropriate at that time. In reply, the Hospital countered that there was no legal impossibility that impeded the Practice's performance regarding the repayment of funds advanced under the agreement. And Dr. Rasheed's behavior, which may have triggered repayment, did not relieve the Practice of its obligation. The circuit court denied the motion in a docket order, reasoning on the video record of the hearing that there were disputed issues of material fact and indicating that it did not agree with the Hospital's legal argument because of the magnitude of Dr. Rasheed's criminal act. The court set the matter for trial.
The Practice filed a motion for summary judgment thereafter seeking dismissal of the complaint, no longer arguing that there were any material issues of fact to decide but continuing to argue that it was impossible for it to perform under the terms of the agreement due to the sexual misconduct and molestation allegations involving Dr. Rasheed. The Hospital, in its response and renewed motion for summary judgment, continued to argue that it was not legally impossible to perform under the agreement and that subsequent actions of one party to a contract whose performance is necessary did not excuse enforceability. Finally, the Practice had agreed to be liable for Dr. Rasheed's potential failure to perform by agreeing to be *332 jointly and severally liable for repayment. The court entered a summary judgment on March 3, 2017, granting the Practice's motion, denying the Hospital's renewed motion, and dismissing the complaint. It appears that the circuit court concluded that it was impossible for the Practice to continue to perform under the agreement without violating the law. This appeal now follows.
Our standard of review in an appeal from a summary judgment is well-settled in the Commonwealth. "The standard of review on appeal when a trial court grants a motion for summary judgment is 'whether the trial court correctly found that there were no genuine issues as to any material fact and that the moving party was entitled to judgment as a matter of law.' " Lewis v. B & R Corp. , 56 S.W.3d 432, 436 (Ky. App. 2001), citing Scifres v. Kraft , 916 S.W.2d 779, 781 (Ky. App. 1996) ; Palmer v. International Ass'n of Machinists & Aerospace Workers , 882 S.W.2d 117, 120 (Ky. 1994) ; CR 56.03.
The trial court must view the evidence in the light most favorable to the nonmoving party, and summary judgment should be granted only if it appears impossible that the nonmoving party will be able to produce evidence at trial warranting a judgment in his favor. The moving party bears the initial burden of showing that no genuine issue of material fact exists, and then the burden shifts to the party opposing summary judgment to present "at least some affirmative evidence showing that there is a genuine issue of material fact for trial." The trial court "must examine the evidence, not to decide any issue of fact, but to discover if a real issue exists."
Lewis , 56 S.W.3d at 436 (footnotes omitted). "Because summary judgment involves only legal questions and the existence of any disputed material issues of fact, an appellate court need not defer to the trial court's decision and will review the issue de novo. " Id. at 436, citing Scifres , 916 S.W.2d at 781 ; Estate of Wheeler v. Veal Realtors and Auctioneers, Inc. , 997 S.W.2d 497, 498 (Ky. App. 1999) ; Morton v. Bank of the Bluegrass and Trust Co. , 18 S.W.3d 353, 358 (Ky. App. 1999). The parties have agreed that there are no disputed issues of material fact. Therefore, we shall review the circuit court's legal ruling de novo.
The Hospital's first argument addresses the interpretation of the agreement; specifically, the provisions in which the Practice agreed to be jointly and severally liable for repayment for funds advanced in the event of a breach. The interpretation of a contract is a question of law and is subject to de novo review. Cantrell Supply, Inc. v. Liberty Mut. Ins. Co. , 94 S.W.3d 381, 385 (Ky. App. 2002). "In the absence of ambiguity a written instrument will be strictly enforced according to its terms." Mounts v. Roberts , 388 S.W.2d 117, 119 (Ky. 1965). "A contract is ambiguous if a reasonable person would find it susceptible to different or inconsistent interpretations." Cantrell Supply, Inc. , 94 S.W.3d at 385.
In arguing that the circuit court erred in not holding that the Practice was liable based upon the terms of the agreement, the Hospital relies upon Buridi v. Leasing Group Pool II, LLC , 447 S.W.3d 157, 177 (Ky. App. 2014), in which this Court explained:
When contract terms are unambiguous, we look only to the four corners of the document-in this case, the guaranties-to determine the intent of the parties. See 3D Enterprises Contracting Corp. v. Louisville and Jefferson County Metro. Sewer Dist. , 174 S.W.3d 440, 448 (Ky. 2005). "The fact that one party may have intended different results, however, *333 is insufficient to construe a contract at variance with its plain and unambiguous terms." Cantrell Supply, Inc. v. Liberty Mut. Ins. Co. , 94 S.W.3d 381, 385 (Ky. App. 2002). In these guaranties, the phrase, "they shall be liable jointly and severally" is clear and unambiguous.
We agree that the language in the agreement providing for joint and several liability is unambiguous, and the Practice has not argued otherwise. Therefore, the terms of the agreement must be strictly enforced.
The Hospital has also cited to the former Court of Appeals' opinion in Frazier v. Collins , 300 Ky. 18, 22, 187 S.W.2d 816, 818-19 (1945), quoting Mid-Continent Petroleum Corp. v. Barrett , 297 Ky. 709, 181 S.W.2d 60, 62 (1944), for the rule of law that, "when a party engages without qualification to do an act, his performance is not excused because it becomes onerous or unprofitable. It is deemed his own fault if he does not expressly provide against contingencies and exempt himself from responsibility in certain events." That is exactly what transpired in the case under review. In the agreement, the Practice agreed to be jointly and severally liable in the event of a breach. There is no dispute that Dr. Rasheed breached the contract by failing to remain in his practice for 36 months or that the Practice refused to repay the advanced funds when demanded. Therefore, Dr. Rasheed and the Practice are jointly and severally liable for the repayment of the advanced funds pursuant to the agreement.
Next, the Hospital contends that impossibility of performance, as the Practice has asserted, does not discharge a contract under Kentucky law. In Frazier , supra , the Court stated:
The general rule is that a party to a contract will not be relieved of the obligations undertaken by him merely because supervening events have rendered the contract unprofitable, even though the supervening event be a law, regulation or other governmental act. It is only where the governmental act makes unlawful the obligation assumed under a contract, prohibits its performance or otherwise renders performance impossible that the obligor will be excused from further performance.
Frazier , 187 S.W.2d at 817-18 (internal citations omitted). In Consolidated Realty Co. v. Richmond Hotel & Bldg. Co. , 253 Ky. 463, 69 S.W.2d 985, 988 (1934), the former Court of Appeals discussed impossibility:
[A contract] must be ascertainable, certain, and not illegal; i. e., involving a violation of a statute, contrary to public policy, nor immoral. The term "physical impossibility," when used in reference to contracts, means practically impossible according to the state of knowledge of the date of the contract. A legal impossibility, as it applies to contracts, is that which is legally impossible for the promisor to do. The fact a promise is made, depending on a condition subsequent, does not affect its validity.
And in Raisor v. Jackson , 311 Ky. 803, 807-08, 225 S.W.2d 657, 659 (1949), the same Court instructed:
As set forth in Restatement, Contracts, Section 455, impossibilities arising from the inability of the promisor to perform an act do not discharge the duty created by the contract. In the comment to this section, the vital distinction is noted between 'the thing cannot be done' and 'I cannot do it'. It is said in 12 Am.Jur., Contracts, Section 370 : 'If a promise is conditioned upon the act or consent of a third person, the condition must be performed. But the inability to control the actions of a third person, whose co-operation is needed for the performance of *334 an undertaking, is ordinarily not to be regarded as an impossibility avoiding the obligation. One who engages for the act of a stranger must procure the act to be done, and the refusal of the stranger without the interference of the other party to the contract is no excuse. The performance of an absolute promise is not excused by the fact that a third person refuses or fails to take action essential to performance.'
The Practice contends that it would be against the law for it to have permitted Dr. Rasheed to continue practicing, which excused it from performing pursuant to the terms of the contract. We disagree.
There is no question that the agreement was legally possible to enforce when it was entered into and that Dr. Rasheed breached the agreement when he stopped practicing in Jackson prior to completing his 36-month contract period. It is equally clear that the agreement mandates the repayment of the advanced payments in the event of a breach for any reason and without condition. As the Hospital states, the reason for the breach is immaterial. It was certainly not illegal to require performance by the Practice to repay the advanced funds pursuant to the terms of the agreement, regardless of the reason for the breach. The Practice took the risk that Dr. Rasheed might breach his obligations under the agreement in some manner when it agreed to be jointly and severally liable under the terms of the agreement. The Practice cannot now claim impossibility based on the actions of Dr. Rasheed. Therefore, we must hold that the circuit court erred as a matter of law in granting summary judgment in favor of the Practice and denying the Hospital's motion.
For the foregoing reasons, the summary judgment of the Breathitt Circuit Court is reversed, and this matter is remanded with directions that the circuit court enter a summary judgment in favor of the Hospital and for any further proceedings necessary to conclude the matter.
ALL CONCUR.

The amount was corrected in the first-amended complaint.

Dr. Rasheed was not named as a defendant in the complaint, we presume because his whereabouts were unknown.