RENDERED: MARCH 1, 2024; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2022-CA-0493-MR
AND
NO. 2022-CA-0505-MR

A & G COAL CORPORATION;
BEECH CREEK COAL
KENTUCKY CORPORATION;
FOUR STAR RESOURCES, LLC;
INFINITY ENERGY, INC.;
KENTUCKY FUEL
CORPORATION; SEQUOIA
ENERGY, LLC; VIRGINIA
FUEL CORPORATION;
JAMES C. JUSTICE, II; AND
JAMES C. JUSTICE, III        APPELLANTS/CROSS-APPELLEES


       APPEAL AND CROSS-APPEAL FROM FRANKLIN CIRCUIT COURT
v.        HONORABLE THOMAS D. WINGATE, JUDGE
ACTION NO. 15-CI-01125



COMMONWEALTH OF KENTUCKY,
ENERGY AND ENVIRONMENT
CABINET        APPELLEE/CROSS-APPELLANT

OPINION
AFFIRMING

** ** ** ** **

BEFORE: CETRULO, JONES, AND TAYLOR, JUDGES.

TAYLOR, JUDGE:  A & G Coal Corporation; Beech Creek Coal Kentucky Corporation; Four Star Resources, LLC; Infinity Energy, Inc.; Kentucky Fuel Corporation; Sequoia Energy, LLC; Virginia Fuel Corporation; James C. Justice, II; and James C. Justice, III (hereinafter collectively referred to as appellants) bring Appeal No. 2022-CA-0493-MR from a November 9, 2021, Order of the Franklin Circuit Court, as amended by Order entered April 18, 2022, enforcing a Settlement Agreement entered into with the Commonwealth of Kentucky, Energy and Environment Cabinet (Cabinet), on April 30, 2019 and incorporated into an Agreed Judgment entered on October 21, 2019.  The Cabinet has filed a Cross-Appeal from the same Orders in Cross-Appeal No. 2022-CA-0505-MR, contesting the circuit court's amendment of the interest rate on the outstanding sum owed by appellants as set out in the Settlement Agreement and Agreed Judgment.  For the reasons stated, we affirm both appeals.

## I. APPEAL NO. 2022-CA-0493-MR

## BACKGROUND

On August 15, 2014, the parties entered into an Agreed Order (2014 Agreed Order) with the Cabinet that required appellants to timely complete certain reclamation activities on coal mining permits contained in the 2014 Agreed Order

by September 1, 2015.[1]  Incorporated into the 2014 Agreed Order was an

admission by appellants that they had breached twelve previous agreed orders

relating to many of the violations and penalties at issue in the 2014 Agreed Order.

The 2014 Agreed Order provided for bonding requirements and permitting actions.

Notably, it was stipulated that the appellants owed the Cabinet $4,498,995 – an

amount the parties agreed fairly represented the combined value of several civil

penalties the Cabinet could have otherwise assessed against appellants under

Kentucky law.  Further, the 2014 Agreed Order stipulated that if appellants strictly

complied with and satisfied all of the order's terms by September 1, 2015,[2]

appellants would only owe the Cabinet $1.5 million.  In the event appellants failed

to do so, however, whatever remained of the $4,498,995 would be due as of that

date and would begin to accrue interest from September 1, 2015.

On October 23, 2015, the Cabinet initiated the underlying action in

Franklin Circuit Court to enforce the 2014 Agreed Order.  In its complaint, the

Cabinet alleged appellants failed to comply with the terms of the 2014 Agreed

---

[1] The 2014 Agreed Order was entered in an administrative proceeding before the Energy and Environment Cabinet (Cabinet) on August 15, 2014, and signed by Leonard K. Peters, as Secretary of the Cabinet.

[2] Paragraph 51 of the 2014 Agreed Order provided:  "Time is of the essence in the implementation of this Agreed Order by the Petitioners and the terms of this Agreed Order are to be strictly construed so as to achieve prompt and complete abatement of violations and payment of civil penalties."  Paragraph 56 provided that "Failure to complete all remedial measures by September 1, 2015, unless under extension granted . . . , shall result in the imposition of the [various breach remedies] without hearing or notification of breach."

Order.  After nearly four years of litigation and at least four mediations that followed, the parties then entered into a Settlement Agreement effective April 30, 2019, (2019 Settlement Agreement).  The terms of the 2019 Settlement Agreement required appellants to pay the principal balance remaining from the 2014 Agreed Order ($2,998,995).  Among other terms, it also required appellants to complete reclamation activities at five different sites by specified times and to post a letter of credit with the Cabinet to secure the payment of the principal balance owed.

Paragraph 7 of the 2019 Settlement Agreement further provided that if appellants "fully satisfied all of the obligations set forth in this Settlement Agreement within all of the time frames specified in this Settlement Agreement as confirmed by the [Cabinet], the [Cabinet] shall acknowledge that the principal balance of the $2,998,995 civil penalty plus interest accrued thereon owed by the [appellants] to the [Cabinet] pursuant to the August 15, 2014 Agreed Order has been fully satisfied."  In the event appellants failed to do so, Paragraph 10 provided, in sum, that appellants would immediately be in default, and that the Cabinet would be entitled to the relief and remedies otherwise provided pursuant to the 2014 Agreed Order.

Subsequently, the parties jointly sought and were granted an Agreed Judgment entered by the circuit court on October 21, 2019.  Importantly, for purposes of this appeal, the Agreed Judgment incorporated therein the terms of the

2019 Settlement Agreement and the 2014 Agreed Order. On September 27, 2021, the Cabinet moved the circuit court to declare appellants in default of the 2019 Settlement Agreement, and to enforce the Agreed Judgment of October 21, 2019. Appellants did not dispute that they had failed to complete all the reclamation activities at the five different sites by the deadlines specified in the 2019 Settlement Agreement. Nevertheless, they argued they should not be found in default because, as they asserted, the COVID-19 pandemic made it "impractical" for them to perform the required work. And, due to that purported impracticality, appellants argued the circuit court was required to exercise its equitable authority to provide them a six-month extension regarding their obligations. Ultimately, the circuit court rejected appellants' arguments and entered an Order enforcing the October 21, 2019, Agreed Judgment in favor of the Cabinet. This appeal followed.

<u>STANDARD OF REVIEW</u>

As noted, this appeal looks to the enforcement of the Agreed Judgment entered into by the parties on October 21, 2019, that incorporated the terms of the parties' 2019 Settlement Agreement as well as relevant terms of the 2014 Agreed Order. The circuit court concluded that appellants failed to comply with the 2019 Settlement Agreement. Accordingly, our review in this appeal necessarily looks to the interpretation and construction of the terms of the 2019 Settlement Agreement, which is well-established under Kentucky jurisprudence to

be questions of law for this Court. *See Cinelli v. Ward*, 997 S.W.2d 474, 476 (Ky. App. 1998). Accordingly, our review is *de novo*. *Id.*; s*ee also Nelson v. Ecklar*, 588 S.W.3d 872, 878 (Ky. App. 2019).

ANALYSIS

The primary arguments raised by appellants in this appeal are: (1) appellants' substantially complied with most of their obligations under the 2019 Settlement Agreement; (2) their failure to complete all the reclamation activities at the five different sites by the deadlines specified in the 2019 Settlement Agreement should have been excused under the doctrine of "impracticability"; and (3) the circuit court should have equitably modified their agreed-upon deadlines in the 2019 Settlement Agreement to provide them a six-month extension, rather than declaring them in breach.

Regarding their argument of substantial compliance, even if appellants substantially complied with their obligations, substantial compliance was not a valid defense to the appellant's breach of the 2019 Settlement Agreement. The 2014 Agreed Order required strict compliance, and that requirement was never modified; instead, it was effectively reemphasized in Paragraph 10 of the 2019 Settlement Agreement and as noted, incorporated into the October 21, 2019, Agreed Judgment. Thus, this argument fails on its face.

As concerns appellants' argument of "impracticality" due to the Covid pandemic, we agree with and adopt the well-reasoned analysis of the circuit court. As set forth in its initial order of November 9, 2021, the circuit court explained in relevant part:

> In *Frazier v. Collins*, Kentucky's former highest court acknowledged the doctrine of impossibility and opined:
>
>> The general rule is that a party to a contract will not be relieved of the obligations undertaken by him merely because supervening events have rendered the contract unprofitable, even though the supervening event be a law, regulation, or other governmental act . . . It is only where the governmental act makes unlawful the obligation assumed under a contract, prohibits its performance or otherwise renders performance impossible that the obligor will be excused from further performance.
>
> 187 S.W.2d 816, 817-18 (Ky. 1945) (internal citations omitted). The Court finds the holding in *Frazier* particularly relevant to the underlying matter as the appellees in *Frazier* argued that the rationing of gas by the federal government – due to World War II – had made performance of the contract unprofitable or onerous because the economically disruptive events were not contemplated at the time the contract was entered. *Id.* at 817. As noted above, the court rejected the appellees' position and opined that it is "an elementary principle of law of contracts that when a party engages without qualification to do an act, his performance is not excused because it becomes onerous or unprofitable. It is deemed his own fault if he does not expressly provide against contingencies and exempt himself from responsibility in

-7-

certain events." *Id.* at 818-19 (quoting *Mid-Continent Petroleum Company v. Barrett*, 181 S.W.2d 60, 62 (Ky. 1944)). Moreover, recently the Kentucky Court of Appeals reaffirmed the holding in *Frazier* with respect to the doctrine of impossibility in *Jackson Hospital Corporation v. United Clinics of Kentucky, LLC*, 545 S.W.3d 327, 333 (Ky. Ct. App. 2018).

Nevertheless, whether the Court analyzes the present issue under the accepted defense, the doctrine of impossibility, or [appellants'] desired defense of impracticability, the Court agrees with the Cabinet that the COVID-19 pandemic is not a justifiable reason for [appellants] having failed to complete the required work. As noted above, the [appellants] have been aware of the violations for nearly a decade. The parties entered the 2014 Agreed Order with the intent for the violations to be amended by September 1, 2015. After [appellants] failed to timely complete the work under the 2014 Agreed Order, the Cabinet filed the underlying action seeking enforcement of the 2014 Agreed Order, including the penalties contained therein. Over four (4) years the Court gave [appellants'] the opportunity to complete the required work and sent the parties to mediation four (4) times in attempt to settle the ongoing issues. After lengthy negotiations, the parties entered into the 2019 Settlement Agreement, which was approved by the Court.

Over six (6) years have passed since this present action began, and [appellants] have still not fixed the violations. The relevant sites have not been touched since *before* the COVID-19 pandemic began. Nevertheless, under the 2019 Settlement Agreement, failure of [appellants] to complete *any* of their obligations renders them in default. Thus, [appellants'] failure to complete the required reclamation activities at Sequoia by December 31, 2019, indisputably before the Commonwealth's COVID-19 emergency declaration on

-8-

March 6, 2020, rendered [appellants] in default of the 2019 Settlement Agreement.

The Court also finds [appellants'] arguments with respect to the COVID-19 pandemic unpersuasive because [appellants] have had years to complete the required work, but failed to make even the smallest effort since entering into the 2019 Settlement Agreement. The deadlines contained in the 2019 Settlement Agreement were either before, less than two (2) months after, and less than four (4) months after the Commonwealth's emergency declaration, yet, Kevin Hembre ("Hembre"), Assistant Director of Mine Reclamation and Enforcement, offers that there has been no work to stabilize the hollow fill at Bevin's Branch in five (5) years and no work to reclaim the 2,940 feet of highwall at the site since early 2019. Affidavit of Kevin Hembre, ¶ 7-8. At the Sequoia site, Hembre states that no work has been done to reclaim the highwall in four (4) years. *Id*., ¶ 9. Finally, at Infinity, Hembre provides that no work has been done on the site since the Agreed Judgment was entered. *Id*., ¶ 10-11. Furthermore, the Court rejects [appellants'] argument that it was impractical for [appellants] to complete the required reclamation work, because, as previously outlined, [appellants] had not made an effort to perform the reclamation work months and years prior to the COVID-19 pandemic.

Consequently, to the Court, this shows that the COVID-19 pandemic is not an excuse for the [appellants'] failure to complete their contractual obligations. Nevertheless, the Court would be remiss not to point out that Governor Andy Beshear issued an Executive Order on March 25, 2020, which declared mining as a life-sustaining business allowed to remain open during any state shutdown. Ky. Exec. Order No. 2020-257 (March 25, 2020). Thus, the Commonwealth has never interfered, even while navigating an

-9-

> unprecedented pandemic, with [appellants'] ability to conduct mining work.

November 9, 2021, Order at 6-8.

Appellants next argue that the circuit court should have equitably modified their agreed-upon deadlines regarding their obligations and provided them a six-month extension. In support, they largely rehash their "impracticality due to COVID-19" argument, but otherwise cite no rule of law that required the circuit court to "equitably modify" their bargain with the Cabinet. We reject this argument for the same reasons set forth above. To quote the circuit court on this point, appellants "failed to meet their obligations under the 2014 Agreed Order and have now failed to meet their obligations under the 2019 Settlement Agreement. The [Cabinet], nor the Court, has any obligation to continue to grant [appellants] leniency."

The remainder of appellants' appeal takes aim at the circuit court's award to the Cabinet of interest at a rate of 8 percent per year on the outstanding balance of penalties owed as of September 1, 2015. First, appellants argue the circuit court erred in granting any award of prejudgment interest to the Cabinet because the statute delineating much of the Cabinet's civil penalty authority, Kentucky Revised Statutes (KRS) 350.990, does not authorize the Cabinet to impose interest on its penalties.

But irrespective of what KRS 350.990 provides, the Cabinet was not awarded prejudgment interest because it "imposed" a "civil penalty" against appellants pursuant to its statutory authority. The Cabinet was awarded prejudgment interest because appellants agreed to paying the Cabinet interest as part of the 2019 Settlement Agreement. Appellants do not contend that the Cabinet lacked authority to enter into the 2019 Settlement Agreement. Nor is this Court aware of any law or regulation that prohibits the Cabinet from negotiating the payment of interest on past due penalties, especially when as in this case, the Cabinet granted appellants extensions of time to comply with their legally required reclamation obligations. Accordingly, this argument is totally without merit.

Finally, appellants argue the circuit court erred by determining that prejudgment interest could begin accruing on September 1, 2015. In their view, this was contrary to the terms of their settlement agreement with the Cabinet and constituted an impermissible "penalty" of "retroactive interest." We disagree. Paragraph 10 of the settlement agreement, as incorporated into the circuit court's Agreed Judgment of October 21, 2019, provided in relevant part:

> In the event of default by the Justice Defendants . . . the Justice Defendants shall be responsible for payment to the Cabinet of interest accrued on the principal sum of the $2,998,995 civil penalty from September 1, 2015[,] pursuant to the August 15, 2014[,] Agreed Order.

The Agreed Judgment of October 21, 2019, did not forgive any interest on the principal sum of $2,998,995 that remained from what was owed under the Agreed Order of August 15, 2014. Likewise, the Agreed Judgment did not prevent interest from continuing to accrue on the principal amount owed. The Agreed Judgment merely offered appellants a conditional means of having that interest forgiven: Strict compliance with its terms. Accordingly, there was no "retroactive penalty" as claimed by appellants. Having failed to strictly comply with the terms of the Agreed Judgment of October 21, 2019, including the 2019 Settlement Agreement, appellants were in default thus triggering the imposition of interest on the outstanding penalties owed to the Cabinet.

## II. CROSS-APPEAL NO. 2022-CA-0505-MR

On cross-appeal, the Cabinet contests the rate of interest it was awarded as of September 1, 2015, in the circuit court's Order entered April 18, 2022, amending the court's November 9, 2021, Order. As indicated, the circuit court awarded interest at the rate of 8 percent per year on the outstanding penalties owed. The Cabinet argues the circuit court erred in doing so because the agreed interest rate under the 2019 Settlement Agreement was 8 percent per day or 2,920 percent per annum, not 8 percent per year.[3]

---

[3] In Paragraph 54 of the 2014 Agreed Order, the parties agreed that a breach of the terms of the order would result in the imposition of interest at the rate of 8 percent per day on the outstanding balance owed. Paragraph 10 of the 2019 Settlement Agreement provided upon default, for the

-12-

Before addressing in detail the Cabinet's argument, some additional background is necessary. To be clear, 8 percent interest on a *per day* basis (*e.g.*, 2,920 percent per year) is what the parties' agreement provided. Furthermore, the circuit court correctly rejected appellants' argument that this rate of interest was merely the product of a mistake. Resolving that point in its order of November 9, 2021, the circuit court explained:

> First, Defendants were well represented by counsel when negotiating both the 2014 Agreed Order and the 2019 Settlement Agreement. The 2014 Agreed Order specifies an 8% daily interest rate in two (2) places; paragraphs 48 and 54(A). Thus, it appears impossible to the Court that the skilled parties and counsel would overlook a mistake twice in a contract. The Court also finds Defendants' admission that the 8% daily interest rate under the 2014 Agreed Order did apply to the $50,000 per month installment payments of the $1,500,000 penalty Defendants paid to the Cabinet particularly illuminating of the parties' true contracting intentions. This makes it clear to the Court that Defendants *were* aware of the 8% daily interest rate that is contained in paragraphs 48 and 54(A) of the 2014 Agreed Order. Furthermore, notably, paragraph 10 of the 2019 Settlement Agreement incorporates paragraph 54 of the 2014 Agreed Order and sets forth payment to the Cabinet of interest accrued on the civil penalty. Again, it appears impossible to the Court that the skilled parties and counsel would overlook this mistake and not alter the interest rate, if that was the parties' true intentions. . . .

November 9, 2021, Order at 13-14.

---

recovery of interest from September 1, 2015, pursuant to the terms of the 2014 Agreed Order. All of these provisions were incorporated into the 2019 Agreed Judgment.

-13-

Despite initially upholding the parties' agreed-upon 2,920 percent rate of interest in its Order of November 9, 2021, the circuit court later granted a Kentucky Rules of Civil Procedure (CR) 59.05 motion filed by appellants and reconsidered its position. In its April 18, 2022, Order, the circuit court explained it agreed with appellants that an 8 percent per day interest rate – which would have effectively required appellants to pay close to $600,000,000 in interest on a less than a $3,000,000 judgment – was "an excessive amount" and would have resulted in "manifest injustice." Accordingly, the court refused to enforce the parties' agreed-upon interest rate, and instead required appellants to pay interest on the judgment "at a rate of 8% per year from September 1, 2015, until paid in full."

With that in mind, the Cabinet's sole argument on appeal is that it was entitled to its agreed-upon interest rate of 2,920 percent per annum – and nothing less – because none of Kentucky's various usury statutes prohibited it from receiving the benefit of its bargain. The Cabinet notes that its agreement with appellants was in writing and for an amount in excess of $15,000. Therefore, KRS 360.010(1)(b) permitted the parties to agree upon "any rate." KRS 360.040 also provides "[a] judgment rendered on a contract, promissory note, or other written obligation *shall* bear interest at the interest rate established in that contract, promissory note, or other written obligation." KRS 360.040(3) (emphasis added).

With respect to usury, the Cabinet is correct that Kentucky's applicable statutes would not invalidate this aspect of its bargain with appellants. Indeed, usury is not an available defense for corporations and their sureties or guarantors. *See* KRS 360.025; *see also E'Town Shopping Center, Inc. v. Lexington Finance Co.*, 436 S.W.2d 267, 269 (Ky. 1969). When the circuit court held that the agreed-upon rate was "excessive," it did not cite "usury" or any other legal authority in support of the court's change of heart regarding the Cabinet's entitlement to 2,920 percent per annum interest. For the purpose of this appeal, we presume that the circuit court's decision was founded upon at least one of the arguments appellants properly raised below. *See Sword v. Scott*, 169 S.W.2d 825, 827 (Ky. 1943) ("In the absence of the court's specifying the ground or grounds for his dismissal of the petition, it will be assumed that it was upon any or all of the grounds which the proof sufficiently established."). And one such argument below,[4] with which we agree, was that a 2,920 percent yearly rate of interest constituted an unenforceable contractual penalty upon appellants.

---

[4] The Cabinet notes that appellants raised new arguments in their Kentucky Rules of Civil Procedure (CR) 59.05 motion below, and contends the circuit court erred if its reconsidered judgment was based upon any of them. *See, e.g.*, *Hopkins v. Ratliff*, 957 S.W.2d 300, 301 (Ky. App. 1997) ("A party cannot invoke [CR 59.05] to raise arguments and introduce evidence that could and should have been presented during the proceedings before entry of the judgment.") (Citation omitted.) But, A & G Coal Corporation; Beech Creek Coal Kentucky Corporation; Four Star Resources, LLC; Infinity Energy, Inc.; Kentucky Fuel Corporation; Sequoia Energy, LLC; Virginia Fuel Corporation; James C. Justice, II; and James C. Justice, III, (collectively referred to as appellants) argued that the 2,920 percent yearly rate of interest constituted an

Ascertaining whether a contractual provision is an impermissible penalty is a question of law. *See Fidelity & Deposit Co. of Maryland v. Jones*, 75 S.W.2d 1057, 1060 (Ky. 1934). As for what guides our analysis, "[j]ust compensation for the injury sustained is the principle at which the law aims, and the parties will not be permitted, by express stipulation, to set this principle aside." *Id*. at 1060 (citation omitted). "[I]t is not the policy of the courts to enforce stipulated damage provisions that are far in excess of the actual damages that would naturally flow from a breach." *Uncle George Orphans Home, Inc. v. Landrum*, 551 S.W.2d 582, 584 (Ky. App. 1977) (citation omitted). With respect to the law governing liquidated damages, such provisions are only deemed enforceable (1) where actual damages would be uncertain or difficult to ascertain; and (2) the amount agreed upon is not greatly disproportionate to the actual injury. *See Goetz v. Asset Acceptance, LLC*, 513 S.W.3d 342, 346 (Ky. App. 2016). If the parties merely intended the liquidated damages provision as a penalty for breach, rather than as compensation, it is not enforceable. *See Jones*, 75 S.W.2d at 1059-1060.

We conclude that under the facts and circumstances of this case now on appeal, the rate of interest specified by the parties was an unenforceable penalty

---

unenforceable contractual penalty in a memorandum filed with the circuit court on November 1, 2021, prior to the circuit court's initial dispositive ruling in this case.

provision. Absent appellants' default, no interest was owed. We must agree with the circuit court that 2,920 percent per annum interest constitutes a manifest injustice. The Cabinet makes no argument that this rate of interest was in any way related to compensation for a breach. Nor does the Cabinet argue that this contractual rate was otherwise a "means of recognizing the economic reality that [appellants have] enjoyed a long opportunity to earn interest on the money that [they] wrongfully withheld." *Reliable Mechanical, Inc. v. Naylor Industrial Services, Inc.*, 125 S.W.3d 856, 858 (Ky. App. 2003) (explaining the purpose of prejudgment interest). In Paragraph 48 of the August 14, 2014, Agreed Order – as incorporated into their 2019 Settlement Agreement and subsequent Agreed Judgment – the parties expressly agreed that the 8 percent per day rate was "a penalty." Taken objectively, this default rate of interest was exactly that – a penalty. It was nothing more than a device to coerce appellants into prompt payment and strict compliance with their contractual obligations which obviously failed. While the law does not unequivocally forbid the allowance of certain contractual penalties, we find no error by the circuit court in declining to enforce the parties' default-only interest rate of 2,920 percent per annum.

### III. CONCLUSION

For the foregoing reasons, the orders of the Franklin Circuit Court are affirmed with respect to both the appeal and cross-appeal.

-17-

ALL CONCUR.


BRIEFS FOR APPELLANTS/
CROSS-APPELLEES:

Richard A. Getty
David T. Faughn
Lexington, Kentucky

Steven R. Ruby
Charleston, West Virginia

BRIEFS FOR APPELLEE/CROSS-
APPELLANT KENTUCKY
ENERGY AND ENVIRONMENT
CABINET:

Lance C. Huffman
Leilani Martin
Lee Archer
Frankfort, Kentucky