RENDERED: JUNE 14, 2024; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2022-CA-1134-MR

CHARLES A. KNOPPE                          APPELLANT


               APPEAL FROM NELSON CIRCUIT COURT
v.           HONORABLE CHARLES C. SIMMS, III, JUDGE
                  ACTION NO. 20-CI-00237


THE LINCOLN NATIONAL LIFE
INSURANCE COMPANY                     APPELLEE

AND

NO. 2022-CA-1185-MR

THE LINCOLN NATIONAL LIFE
INSURANCE COMPANY                 CROSS-APPELLANT


        CROSS-APPEAL FROM NELSON CIRCUIT COURT
v.           HONORABLE CHARLES C. SIMMS, III, JUDGE
                  ACTION NO. 20-CI-00237


CHARLES A. KNOPPE                   CROSS-APPELLEE

<u>OPINION</u>
<u>AFFIRMING</u>

** ** ** ** **

BEFORE:  ACREE, KAREM, AND LAMBERT, JUDGES.

LAMBERT, JUDGE:  In this breach of contract case, Charles Knoppe appeals from an order of the Nelson Circuit Court granting partial summary judgment to Knoppe and partial summary judgment to Lincoln National Life Insurance Company ("Lincoln"), the issuer of Knoppe's long-term disability insurance policy.  Lincoln cross-appeals, and argues it did not act arbitrarily and capriciously in offsetting all of Knoppe's retirement benefits against his long term disability benefits ("LTD").  We affirm the circuit court.

## Factual and Procedural Background

Knoppe was employed by Nelson County as a road maintenance worker from 1983 until he began working for the City of Bardstown as a maintenance worker in October 1988.  During both positions of employment, Knoppe participated in the County Employees Retirement System ("CERS") and contributed to his retirement plan along with Nelson County and the City of Bardstown.  He retired in 2004 and began receiving monthly retirement benefit payments.  For simplicity, Knoppe's retirement benefits accumulated from 1983-2004 will be collectively referred to as his CERS1 benefits.

In February 2005, Knoppe went back to work for the City of Bardstown as a part-time maintenance worker. Because he was part-time, he did not participate in the CERS program, but continued to receive his monthly CERS1 retirement benefits. In 2006, Knoppe again began working full-time for the City of Bardstown as a sanitation driver and again participated in the CERS program. To differentiate, Knoppe's retirement benefits that began to accumulate in 2006, are referred to as his CERS2 benefits. In 2015, the City of Bardstown also began providing full-time employees LTD through Lincoln.

In 2017, Knoppe was diagnosed with bladder cancer. He could no longer work and began receiving Social Security Disability Insurance payments ("SSDI"). He was also approved to begin receiving CERS2 disability retirement benefits. Knoppe also filed a claim for LTD with Lincoln. Initially, Lincoln informed Knoppe he would receive $1,924.00 per month in LTD, which was 60% of his pre-disability monthly earnings. However, shortly thereafter, Lincoln informed Knoppe that due to an offset of his monthly CERS1, CERS2, and SSDI payments (defined in the policy as Other Income Benefits), he was not entitled to LTD. Lincoln explained that this was because the amount of Knoppe's Other Income Benefits, as defined by the policy, exceeded 100% of his basic monthly earnings from the City of Bardstown prior to his disability.

Knoppe filed a breach of contract claim in Nelson Circuit Court in 2020.[1] Lincoln immediately filed a motion to dismiss, which was denied. The circuit court found that it "had no idea" whether Lincoln had properly calculated Knoppe's benefits under the terms of the policy. The parties then engaged in discovery. In January 2022, Lincoln filed a motion for summary judgment, arguing there was no ambiguity in the terms of the policy and it had correctly calculated that Knoppe's Other Income Benefits exceeded his basic monthly earnings as an employee with the City of Bardstown. Lincoln contended Knoppe was therefore not entitled to LTD under the terms of the policy. Knoppe also filed a motion for partial summary judgment. He argued that the Other Income Benefits exclusion clause and the discretionary clause in the policy were unenforceable as a matter of law.

The circuit court held a hearing and granted partial summary judgment to Knoppe. The court found that, under the terms of the policy, Knoppe's CERS1 benefits did not count as Other Income Benefits to offset the LTD to be paid by Lincoln, and that Lincoln acted arbitrarily and capriciously in including CERS1 as an Other Income Benefit. However, the circuit court ruled

---

[1] The record before us reveals Knoppe filed a putative class action lawsuit against Lincoln in 2018, but Lincoln successfully removed the action to the United States District Court for the Western District of Kentucky. Knoppe voluntarily dismissed the action and filed the instant lawsuit, claiming only breach of contract, in the circuit court.

that, under the terms of the policy, Knoppe's SSDI and CERS2 benefits could be used to offset Knoppe's LTD. The court also found there was a question of fact regarding the amount of Knoppe's monthly pay as an employee of the City of Bardstown.

Less than two weeks later, Lincoln filed paperwork clarifying Knoppe's monthly pay and filed a motion asking the circuit court to remove the "arbitrary and capricious" language from its prior order. The circuit court then entered an order granting summary judgment to Lincoln. Although the court revised some language in the prior partial summary judgment order, it did not remove the "arbitrary and capricious" language. As a result of enforcing the policy according to its terms – with the exception of Knoppe's CERS1 benefits – the circuit court ruled Knoppe was entitled to $13,690.00 in LTD benefits from May 2017, through April 1, 2028, plus 12% interest.[2] This appeal followed.

**Standard of Review**

The construction and legal effect of an insurance contract is a matter of law for the court, and is therefore subject to *de novo* review. *Abney v. Nationwide Mut. Ins. Co.*, 215 S.W.3d 699, 703 (Ky. 2006).

---

[2] Lincoln indicated that it would pay a lump sum to Knoppe, rather than continue to pay monthly benefits. This was not opposed by Knoppe.

## Analysis

There are several issues before us on appeal and cross-appeal. Knoppe argues: (1) the Other Income Benefits portion of the policy is unenforceable as a matter of law because it is unreadable; (2) his CERS2 and SSDI benefits should not be used to offset his LTD; and (3) the policy is unenforceable upon application of the doctrine of reasonable expectations. He also asserts that, even if the Other Income Benefits portion of the policy is enforceable, his CERS2 and SSDI benefits used to offset the LTD should not go back prior to 2015, when the policy was implemented.[3] For its cross-appeal, Lincoln in fact believes the circuit court should be affirmed. However, if we reverse or vacate the circuit court's order, Lincoln asks this Court to determine that it did not act arbitrarily or capriciously in offsetting Knoppe's CERS1 benefits.

We first turn to the relevant portions of Lincoln's thirty-seven-page policy. The cover page states, in relevant part only, "**READ YOUR POLICY CAREFULLY. THIS POLICY IS A LEGAL CONTRACT BETWEEN THE POLICYHOLDER AND THE COMPANY**." (Emphasis in original.) The cover page is followed by a table of contents detailing the various provisions of the

---

[3] Knoppe also argues the policy provides only illusory coverage. However, this argument was not addressed by the circuit court. "An appellate court is without authority to review issues not raised in or decided by the trial court." *Ten Broeck Dupont, Inc. v. Brooks*, 283 S.W.3d 705, 734 (Ky. 2009) (internal quotation marks and citation omitted).

policy.  Definitions for various terms used in the policy are found on pages 5-9.

Relevant to Knoppe's CERS1, CERS2, and SSDI benefits are the following

definitions of Retirement Benefit and Retirement Plan:

> **RETIREMENT BENEFIT**, when used with the term
> Retirement Plan, means a benefit that:
>
> 1.  is payable under a Retirement Plan
>     either in a lump sum or in the form of
>     periodic payments;
>
> 2. does not represent contributions made by
>    an Insured Employee (Payments
>    representing Employee contributions are
>    deemed to be received over the Insured
>    Employee's expected remaining life,
>    regardless of when they are actually
>    received.); and is payable upon:
>
>    a.   early or normal retirement;
>         or
>
>    b. disability (if the payment
>       does reduce the benefit
>       which would have been paid
>       at the normal retirement age
>       under the plan, if disability
>       had not occurred).
>
> **RETIREMENT PLAN** means a defined benefit or
> defined contribution plan that:
>
> 1.  provides Retirement Benefits to
>     Employees; and
>
> 2. is not funded wholly by Employee
>    contributions.

. . . .

> Employer's Retirement Plan is deemed to include any
> Retirement Plan:
>
> > 1.  which is part of any federal, state,
> >     county, municipal or association
> >     retirement system; and
> >
> > 2.  for which the Insured Employee is
> >     eligible as a result of employment with
> >     the Employer.

Page 21 of the policy is entitled "**TOTAL DISABILITY MONTHLY PAYMENT**." The parties do not dispute that Knoppe became totally disabled after his cancer diagnosis. The policy then describes the benefit to be received and how the amount is calculated, providing, in relevant part,

> The amount of the Total Disability Monthly Benefit
> equals:
>
> > 1.  the Insured Employee's Basic Monthly
> >     Earnings multiplied by the Benefit
> >     Percentage[4] (limited to the Maximum
> >     Monthly Benefit); **minus**
> >
> > 2.  Other Income Benefits.

(Emphasis added.)

Pages 26-28 of the policy are entitled "**OTHER INCOME BENEFITS**" and provide, in relevant part,

---

[4] There is no dispute that the policy provides the Benefits Percentage is 60%. In other words, 60% of Knoppe's monthly income from the City of Bardstown prior to his disability.

**OTHER INCOME BENEFITS** means benefits, awards, settlements or Earnings from the following sources. These amounts will be offset, in determining the amount of the Insured Employee's Monthly Benefit. Except for Retirement Benefits and Earnings, these amounts must result from the same Disability for which a Monthly Benefit is payable under this Policy.

. . . .

**Employer's Retirement Plan**. Any Disability Benefits or Retirement Benefits the Insured Employee receives under the Employer's Retirement Plan.

**Social Security and other Government Retirement Plans**. The following Social Security or other Government Retirement Plan benefits will be offset:

> 1. **disability benefits** for which the Insured Employee is eligible; and for which any spouse or child is eligible, because of the Insured Employee's Disability;
>
> 2. **unreduced retirement benefits** for which the Insured Employee is eligible; and for which any spouse or child is eligible, because of the Insured Employee's eligibility for unreduced retirement benefits; or
>
> 3. **reduced retirement benefits** actually received by the Insured Employee; and by any spouse or child, because of the Insured Employee's receipt of reduced retirement benefits.

As used above, "**Government Retirement Plans**" include disability and retirement benefits under:

> 1. the federal Social Security Act[.]

We now turn to Knoppe's argument that the Other Income Benefits

provision of the policy is unenforceable because it is unreadable. He points to

Kentucky Revised Statute ("KRS") 304.14-440, which states, in relevant part,

(1) All insurance policies subject to the provisions of KRS 304.14-420 to 304.14-450 shall be written in language easily readable and understandable by a person of average intelligence and education.

(2) In determining whether a policy or contract is readable within the meaning of this section the commissioner shall consider, at least, the following factors:

(a) The simplicity of the sentence structure and the shortness of the sentences used;

(b) The extent to which commonly used and understood words are employed;

(c) The extent to which legal terms are avoided;

(d) The extent to which references to other sections or provisions of the contract are minimized;

(e) The extent to which definitional provisions are incorporated in the text of the policy or contract; and

(f) Any additional factors relevant to the readability or understandability of an insurance policy or contract which the commissioner may prescribe by regulation.

-10-

Knoppe argues extensively about application of the Flesch readability test.[5]  He contends he subjected the language of the Other Income Benefits provision to the test using Microsoft Word and that it is unreadable for a person of average intelligence.  However, when KRS 304.14-440 is read in conjunction with the applicable administrative regulation promulgated by the Kentucky Department of Insurance (*see* 806 Kentucky Administrative Regulations ("KAR") 14:121 §5), it is clear that the Flesch readability test is to be applied by the Kentucky Commissioner of Insurance in approving an insurance policy issued in Kentucky.  In other words, although the Flesch test may be applicable to the initial approval of an insurance policy by the Commissioner of Insurance, Knoppe fails to cite any caselaw where an insurance policy has been ruled unenforceable by a Kentucky court due to its Flesch readability score.  His argument is unpersuasive.

However, just because the Commissioner of Insurance has approved a policy does not mean its terms are not subject to judicial review.  *See, e.g.*, *Bishop v. Allstate Ins. Co.*, 623 S.W.2d 865, 867 (Ky. 1981).  Courts look for ambiguous terms in an insurance contract.  "In the absence of ambiguity a written instrument will be strictly enforced according to its terms."  *Jackson Hospital Corporation v.*

---

[5] The Flesch readability test is "a test used to estimate the difficulty for given readers of understanding a given text.  The formula is simple:  it measures the ratio of syllables to words, and words to sentences, in the text; the higher those ratios, the more difficult the text is to understand."  *Davis v. Moroney*, 857 F.3d 748, 752 (7th Cir. 2017).

*United Clinics of Kentucky, LLC*, 545 S.W.3d 327, 332 (Ky. App. 2018) (citation omitted). "A contract is ambiguous if a reasonable person would find it susceptible to different or inconsistent, yet reasonable, interpretations." *New Life Cleaners v. Tuttle*, 292 S.W.3d 318, 322 (Ky. App. 2009) (citations omitted). Further, any limitation of benefits contained in an insurance policy must be "clearly stated in order to apprise the insured of such limitations." *St. Paul Fire & Marine Ins. Co. v. Powell-Walton-Milward, Inc.*, 870 S.W.2d 223, 227 (Ky. 1994).

If an insurance policy is found to be ambiguous in its terms, specific rules of interpretation are applied. To wit,

> [t]he reasonable expectation doctrine is based on the premise that policy language will be construed as laymen would understand it and applies only to policies with ambiguous terms – e.g., when a policy is susceptible to two (2) or more reasonable interpretations. Under the reasonable expectations doctrine, when such an ambiguity exists, the ambiguous terms should be interpreted in favor of the insured's reasonable expectations. However, the mere fact that a party attempts to muddy the water and create some question of interpretation does not necessarily create an ambiguity, only actual ambiguities, not fanciful ones, will trigger application of the doctrine.

*True v. Raines*, 99 S.W.3d 439, 443 (Ky. 2003) (internal quotation marks, brackets, and footnotes omitted).

"An ambiguity may either appear on the face of the policy or, in this case, when a provision is applied to a particular claim." *St. Paul Fire & Marine*

-12-

*Ins. Co.*, 870 S.W.2d at 227. In the instant action, ambiguity is created when the terms Retirement Benefits and Retirement Plan, *infra*, are read in conjunction with the Other Income Benefits provision. This is due solely to the unusual set of circumstances in this case caused by Knoppe's retirement from the City of Bardstown in 2004 (CERS1) and his subsequent rehire as a full-time employee in 2006 (CERS2). The ambiguity exists because it is not clear whether his CERS1 benefits, earned in a different era of employment, are susceptible to offset under the Other Income Benefits provision like his CERS2 benefits. A representative from Lincoln testified in his deposition that retirement benefits from *any other* former employer (*e.g.*, from Nelson County) cannot be used to offset Knoppe's LTD under the provision. It is a reasonable interpretation of the policy for Knoppe to believe his CERS1 would not be offset, and it is a reasonable interpretation for Lincoln to believe it should be offset because, although it accumulated and became payable at a different point in Knoppe's employment, his CERS1 benefits are received from the same Employer (*i.e.*, the City of Bardstown) as his current CERS2 benefits. Resolving this ambiguity in favor of Knoppe's reasonable expectations, we conclude the circuit court was correct in its determination that

Knoppe's CERS1 benefits should not be included in the offset under the Other Income Benefits provision.[6]

However, that is the only ambiguity in the policy. Knoppe's argument that his CERS2 should be offset only from the date of the policy forward is without support in the terms of the policy or in any caselaw. Further, the policy clearly states, *infra*, that his SSDI payments are subject to the offset as an Other Income Benefit. Unlike the definition of Retirement Benefit, the provision concerning SSDI does not limit the offset strictly to the City of Bardstown's contributions. Further, Knoppe's contention that his CERS2 and SSDI benefits are protected against any type of garnishment, levy, attachment, etc., under state and federal law misses the mark. Neither benefit is being reduced or garnished in any way. Rather, it is his LTD that is being reduced because Knoppe is a recipient of CERS2 and SSDI, per the terms of the policy.

## Conclusion

For the foregoing reasons, we affirm the Nelson Circuit Court.

ALL CONCUR.

---

[6] We do not agree with the circuit court that Lincoln acted "arbitrarily and capriciously" in determining that Knoppe's LTD would be offset by his CERS1 benefits. However, Lincoln implicitly acknowledges that, in affirming the circuit court, the end result is the same (*i.e.*, because there is an ambiguity surrounding the application of the policy in this specific instance, the policy is interpreted against Lincoln and Knoppe's CERS1 benefits are exempt from the offset). Accordingly, we do not further address Lincoln's cross-appeal.

BRIEFS FOR APPELLANT/CROSS-APPELLEE:

Michael D. Grabhorn
Louisville, Kentucky

BRIEFS FOR APPELLEE/CROSS-APPELLANT:

John P. Rodgers
Edmund S. Sauer
Nashville, Tennessee

P. Kelley Deaton
Bardstown, Kentucky